**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JOHN AKINS, ET AL.,** ) | **Civil Action No. 2:12-cv-2401** |
| **Individually and on behalf of all others** ) | **CJB-SS** |
| **similarly situated and identified below,** ) | |
| ) | |
| ) | **CLASS/COLLECTIVE ACTION** |
| **Plaintiffs,** ) | |
| ) | **SECTION: J(2)** |
| **v.** ) | |
| ) | **MAGISTRATE JUDGE** |
| **WORLEY CATASTROPHE** ) | **JOSEPH C. WILKINSON, JR.** |
| **RESPONSE, LLC,** ) | |
| **WORLEY CATASTROPHE** ) | |
| **SERVICES, LLC, and** ) | |
| **MICHAEL ALLEN WORLEY,** ) | |
| ) | |
| **Defendants.** ) | |

<u>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**</u>

**TABLE OF CONTENTS**

I.     THE FLSA SUPPORTS PROCEEDING AS A COLLECTIVE ACTION ..................... 3

    A.     The Statutory Text Supports Another Collective Action ..................................... 3

    B.     The Caselaw Supports Collective Actions ......................................................... 4

    C.     Though Largely Irrelevant, *Kuncl* Also Aids Plaintiffs........................................ 5

    D.     The Eastern District's *Clay* Opinion Also Supports Plaintiffs...................... 6

    E.     The *Altier* Notice Was Effective In Resolving 538 Evaluator's Claims....... 8

    F.     Putative Plaintiffs Who Did Not Join *Altier* May Join This Matter.............. 8

        1.     So far, 227 people have joined who elected not to join *Altier* .................... 8

        2.     About 50% of the Plaintiffs were still working for Worley when the *Altier* opt-in period expired ................................................................................. 9

        3.     *Sullivan* was pending when the *Altier* opt-in period expired....................... 9

        4.     The *Altier* settlement was posted on the internet ..................................... 10

    G.     The Court Is Not "Stirring Up Unwarranted Litigation" ........................... 11

    H.     *Akins* Is Particularly Well-Suited For Efficient Collective Treatment........ 12

        1.     Compensation decisions were made in lock-step ..................................... 12

        2.     Plaintiffs have demonstrated overwhelming interest ................................ 13

        3.     Many Plaintiffs have claims that continued past settlement ..................... 13

        4.     This Motion is a subterfuge for harassment and retaliation...................... 13

II.     THE FIRST-FILED RULE IS A RED HERRING ..................................................... 14

    A.     Defendants' Requested Relief Does Not Match The Rule's Purposes ....... 15

B.    Transfer, Not Dismissal, Is The Remedy For Second-Filed Cases ............ 16

C.    *Ortiz*'s Dismissal Remedy Is Not Authorized By The Fifth Circuit .......... 16

D.    Defendants' Remaining Authorities Miss The Mark .................................. 17

III.    *ALTIER* CAN HAVE NO CLAIM OR ISSUE PRECLUSIVE EFFECT ON THE
RIGHTS OF NON-PARTICIPANTS ........................................................................ 17

IV.    DISMISSING COLLECTIVE ACTION CLAIMS DOES NOT MEAN PLAINTIFFS
ARE MISJOINED ................................................................................................... 18

V.    MIKE WORLEY IS A PROPER DEFENDANT ........................................................ 19

E.    Plaintiffs' Specific Factual Allegations Against Mike Worley ............................... 19

F.    Under Fifth Circuit Caselaw, Mr. Worley May Be Held Liable ...................... 20

G.    Defendants' Cases Are Easily Distinguishable ................................................ 22

VI.    CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases:**

*Alvarez v. Gold Belt, LLC,*
    2011 WL 1337457 (D. N.J. Apr. 7, 2011) .......................................................................17

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)...........................................................................................................20, 25

*Belt v. Emcare, Inc.,*
    299 F. Supp. 2d 664 (E.D. Tex. 2003) ............................................................................ 5, 18

*Benavides v. Home Depot USA, Inc.,*
    2006 WL 1406722 (S.D. Tex. May 19, 2006) ................................................................. 16

*Cadle Co. v. Whataburger of Alice, Inc.,*
    174 F.3d 599 (5th Cir. 1999) .......................................................................................... 15, 16

*CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione,*
    2012 WL 1836114 (E.D. La. May 21, 2012) .................................................................. 18

*Clay v. Huntington Ingalls, Inc.,*
    Case 2:09-cv-07625 (E.D. La. Sept. 29, 2011).....................................................6, 7, 8, 18

*Cooke v. Jaspers,*
    2010 WL 918342 (S.D. Tex. Mar. 10, 2010) .............................................................21, 24

*Copello v. Boehringer Ingelheim Pharm., Inc.,*
    812 F. Supp. 2d 886 (N.D. Ill. 2011) ...............................................................................17

*Cuvillier v. Taylor,*
    503 F.3d 397 (5th Cir. 2007) .............................................................................................20

*Donovan v. Grim Hotel Co.,*
    747 F.2d 966 (5th Cir. 1984) .......................................................................................21, 24

*Donovan v. University of Texas at El Paso,*
    643 F.2d 1201 (5th Cir. 1981) ........................................................................................... 3

*Falcon v. Starbucks Corp.,*
    580 F. Supp. 2d 528 (S.D. Tex. 2008) ........................................................................... 14

*Fengler v. Crouse Health Found., Inc.*,
    595 F. Supp. 2d 189 (N.D. N.Y. 2009) ...........................................................................5

*Gray v. Powers*,
    673 F.3d 352 (5th Cir. 2012) .......................................................................................21

*Guedry v. Marino*,
    164 F.R.D. 181 (E.D. La. 1995) ...................................................................................19

*Hart v. Rick's Cabaret Int'l, Inc.*,
    2010 WL 5297221 (S.D. N.Y. Dec. 20, 2010) .........................................................23, 25

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989) .................................................................................................. 4, 6

*In re S. Scrap Material Co.*,
    541 F.3d 584 (5th Cir. 2008) .......................................................................................20

*Kaminski v. BWW Sugar Land Partners*,
    2010 WL 4817057 (S.D. Tex. Nov. 19, 2010) .........................................................23, 24

*Kuncl v. IBM, Corp.*,
    660 F. Supp. 2d 1246 (N.D. Okla. 2009).........................................................5, 6, 17, 18

*LaFleur v. Dollar Tree Stores, Inc.*, ("*LaFleur I*")
    2012 WL 2280090 (N.D. Ill. June 18, 2012) ...................................................................16

*LaFleur v. Dollar Tree Stores Inc.*, ("*LaFleur II*")
    Case 2:12-cv-00363 (E.D. Va. Oct. 2, 2012) .........................................................19, 17

*Lentz v. Spanky's Rest. II, Inc.*,
    491 F. Supp. 2d 663 (N.D. Tex. 2007) ...........................................................................11

*Lynch v. United Servs. Auto. Ass'n*,
    491 F. Supp. 2d 357 (S.D. N.Y. 2007)...........................................................................5

*Martin v. Spring Break '83 Productions, L.L.C.*,
    688 F.3d 247 (5th Cir. 2012) .......................................................................................21

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
    Case No. 1:11-cv-06658 (S.D. N.Y. Sept. 6, 2012)...................................................22, 23

*Ortiz v. Panera Bread Co.*,
    2011 WL 3353432 (E.D. Va. Aug. 2, 2011)...........................................................16, 17

*Recinos-Recinos v. Express Forestry, Inc.*,
 2006 WL 197030 (E.D. La. Jan. 24, 2006)....................................................5, 18

*Reich v. Circle C. Inv., Inc.*,
 998 F.2d 324, 329 (5th Cir. 1993) .........................................................24

*Rutherford Food v. McComb*,
 331 U.S. 722 (1947) .............................................................................21

*Save Power Ltd. v. Syntek Fin. Corp.*,
 121 F.3d 947 (5th Cir. 1997) ...............................................................16

*Songer v. Dillon Res., Inc.*,
 569 F. Supp. 2d 703 (N.D. Tex. 2008) .................................................11

*Sutter Corp. v. P & P Indus., Inc.*,
 125 F.3d 914 (5th Cir. 1997) ...............................................................16

*Valcho v. Dallas County Hosp. Dist.*,
 574 F. Supp. 2d 618 (N.D. Tex. 2008) .................................................11

*West Coast Productions, Inc. v. Does 1-351*,
 2012 WL 2577551 (S.D. Tex. Jul. 3, 2012) .........................................19

*West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
 751 F.2d 721 (5th Cir. 1985) ...............................................................15

*White v. Peco Foods, Inc.*,
 546 F. Supp. 2d 339 (S.D. Miss. 2008) ................................................16

*Wolman v. Catholic Health Sys. of Long Island, Inc.*,
 853 F. Supp. 2d 290 (E.D. N.Y. 2012) .................................................23

*Xavier v. Belfor USA Group, Inc.*,
 585 F. Supp. 2d 873 (E.D. La. 2008) ...................................................11

*Zheng v. Liberty Apparel Co.*,
 355 F.3d 61, 66 (2d Cir. 2003) .............................................................23

**<u>Statutes</u>:**

29 U.S.C. § 203(d) ...................................................................................2, 19

29 U.S.C. § 216(b) ............................................................................ 3, 4, 5, 8, 18

To date, 227 Plaintiffs have joined this action, with the most recent Plaintiff added January 7, 2013.  Defendants seek dismissal to require Plaintiffs to re-file their claims individually as 227 separate actions – all in the name of judicial economy.  This position is absurd and lacks *any* supporting legal authority.  Indeed, the authorities that Defendants cite for the general principle that FLSA collective actions are efficient for both the judicial system and the parties involved *support* Plaintiffs' maintenance of this case as a collective action.

The prior, settled *Altier* collective action has <u>no</u> legal effect on the rights of those who did not choose to join it.  The "Notice of Fair Labor Standards Act Overtime Collective Action" that this Court approved for distribution to the prospective opt-ins in the *Altier* matter explicitly advised in a section entitled "**NO LEGAL EFFECT IN NOT JOINING THIS SUIT**" that, "If you choose not to join the Overtime Action, you will not be affected by any judgment or settlement rendered [in] the case, whether favorable or unfavorable to the collective action groups."  Ex. 1, §6 (orig. emphasis).  Though Defendants try to contort the authorities under the legal principles of *res judicata*, collateral estoppel, and the first-filed rule, these principles and authorities simply do not apply.  This is not the *Akins* Plaintiffs' "second bite at the apple," because they never took a first bite.  Defendants are wrong in their contention that Plaintiffs "<u>lost the right</u> to take advantage of [the collective action] procedure by choosing not to participate in Worley I."  Doc. 38-1, pp. 5 & 14 (emphasis added).  Under Defendants' theory, once a collective action on behalf of a group of employees is filed, no other collective action could ever be filed on behalf of the same group, <u>so an employer would be free to continue</u>

violating the law without any collective action recourse.  The *Altier* action has <u>no legal effect</u> on those who did not participate in it.

Defendants' Motion to Dismiss Mike Worley as an individual defendant is also unfounded and borderline frivolous.[1]  The FLSA allows for individual liability against even non-owners by defining an "employer" to include "any person acting directly in the interest of an employer in relation to an employee."  29 U.S.C. §203(d).  Based on deposition testimony taken in the *Altier* action, Plaintiffs specifically allege that Mr. Worley "was the <u>only one</u> who had the authority to <u>set and make changes to the compensation system Worley used for Plaintiffs</u>, and others similarly situated."  Doc. 9, ¶223 (emphasis added) & ¶228.  Thus, Mr. Worley *alone personally* was the *architect* of the unlawful compensation system that is at issue in this action.

Plaintiffs further allege (again, based on deposition testimony taken in the *Altier* action) that Mr. Worley *personally* changed the Plaintiffs' compensation system on at least two occasions during the course of the BP Project:  (1) in the Fall of 2010, by reclassifying a $100 1099-payment per day of work into W-2 wages (issuing a personal memo to Plaintiffs informing them of this conversion of 1099 payments to wages); and (2) in February 2011, by changing the Plaintiffs' day rate from $450-550 per day to $425 per day.  Doc. 9, ¶¶220-28, 237.  Plaintiffs have pled more than sufficient facts to state a claim against Mr. Worley individually.

---

[1] Defendants note that Mr. Worley was not named individually in the *Altier* case.  The facts supporting Mr. Worley's personal liability (which are specifically pled in the operative Complaint in this matter) were not discovered in *Altier* until *after* the *Altier* Plaintiffs' July 13, 2011 deadline to amend their Complaint to add Mr. Worley as a defendant had already passed.  *See Altier* Doc. 141 (Scheduling Order) & 234 (Ps' MSJ, citing Aug. and Sept. 2011 depositions).

## I.       THE FLSA SUPPORTS PROCEEDING AS A COLLECTIVE ACTION.

### A.      The Statutory Text Supports Another Collective Action.

The FLSA authorizes that an action to recover the liability it imposes may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."   29 U.S.C. §216(b).   The FLSA further distinguishes its collective action mechanism from a Rule 23 class action by explicitly providing that, "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  *Id.*  Defendants do <u>not</u> contend that any *Akins* Plaintiff previously joined the *Altier* action.  Thus, there is no allegation that any *Akins* Plaintiff is trying to "double-dip," by participating in both this and the earlier *Altier* action.

Notably, Congress set forth within §216(b) the only circumstances that terminate a would-be plaintiff's right to bring a collective action under the FLSA: "The right provided by this subsection to bring an action by or on behalf of any employees, and the right of any employees to become party plaintiff to any such action, shall terminate <u>upon the filing of a complaint by the Secretary of Labor</u>," which suit allows for broad injunctive relief as well as back wages for all affected employees without any requirement they be specifically named in the complaint. 28 U.S.C. §216(b) (emphasis added); *see also Donovan v. University of Tex. at El Paso*, 643 F.2d 1201, 1204 (5th Cir. 1981).  Had Congress also intended for an earlier, settled private collective action to bar the filing of a later collective action, it could (and would) have stated so in the statute or by subsequent amendment.  Defendants are wrong in their claim that "Plaintiffs have no

legal authority to support their contention that such a successive collective action may be pursued." Doc. 38-1, p. 4. The <u>statute itself</u> allows for Plaintiffs to bring this action on behalf of "themselves and other employees similarly situated." 28 U.S.C. §216(b).

**B.    The Caselaw Supports Collective Actions.**

Defendants' Motion begins with citation to caselaw that supports the general legal principle that FLSA collective actions are efficient for the judicial system and the parties. **<u>None</u>** of these cases involved a second collective action filed after an earlier collective action was settled, and **<u>none</u>** of these cases opined that successive collective actions are not allowed. These cases are stretched to their breaking point as Defendants try to support the notion this suit must be fractured into 227 individual actions. In reality, the caselaw that speaks to the virtues of collective actions supports <u>denial</u> of this Motion.

In *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), the Supreme Court notes that "Congress has stated its policy that ADEA plaintiffs [through incorporation of the FLSA's §216(b)] should have the opportunity to proceed collectively," and that "[a] collective action allows age discrimination plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Id.*, 170. Defendants repeatedly quote the Court's further statement that "'[t]he judicial system benefits by efficient resolution in **<u>one proceeding</u>** of common issues of law and fact arising from the same alleged [unlawful] activity.'" Doc. 38-1, pp. 4-5 (orig. emphasis) (quoting *Hoffmann-La Roche*, 493 U.S. at 170). <u>All</u> of these statements hold equally true to this action, and support Plaintiffs' maintenance of this case as a collective action.

Defendants also quote[2] the New York decision in *Fengler v. Crouse Health Foundation, Inc.*, 595 F.Supp.2d 189 (N.D. N.Y. 2009), that "[t]he collective action mechanism serves to both further the broad, remedial purposes of the FLSA and promote efficiency in adjudication of such claims," and that collective adjudication is intended to "avoid the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources." Doc. 38-1, pp. 5-6. This is precisely why it makes the most sense to allow the 227 *Akins* Plaintiffs to proceed with their *collective* action. In fact, the *Fengler* court explicitly noted that "[r]equiring [the named plaintiff] and opt-in plaintiffs to file separate cases in multiple federal district courts would <u>not</u> be an economic use of judicial resources.'" *Fengler*, 595 F.Supp.2d at 194 (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F.Supp.2d 357, 371 (S.D. N.Y. 2007)) (second alteration in orig.; emphasis added).

### C.   Though Largely Irrelevant, *Kuncl* Also Aids Plaintiffs.

Defendants also rely on the Northern District of Oklahoma's opinion in *Kuncl v. IBM, Corp.*, 660 F.Supp.2d 1246 (N.D. Okla. 2009), but that case too supports Plaintiffs, even though it is largely irrelevant. In *Kuncl*, the plaintiff had <u>failed to opt-out</u> of a <u>hybrid Rule 23 class action/FLSA collective action</u> that had been finally certified in

---

[2] Defendants also cite to Magistrate Judge Knowles' opinion in *Recinos-Recinos v. Express Forestry, Inc.*, 2006 WL 197030 (E.D. La. Jan. 24, 2006) for the general proposition that a collective action prevents piecemeal litigation and inconsistent adjudications. Again, this principle supports maintenance of this action as a collective action, not dismissal followed by hundreds of separately filed cases. Additionally, *Recinos* involved both a FLSA collective action <u>and a Rule 23 class action</u>. In discussing the benefits to a collective action, Judge Knowles noted that "[a] critical difference between a § 216(b) collective action and a Rule 23 class action is that the former requires each class member to opt in as a party plaintiff upon receiving notice in order to participate in any recovery or be bound by the judgment, but the latter (Rule 23 class action) includes all absent class members who do not affirmatively opt out." *Recinos*, 2006 WL 197030, *8; *see also Belt v. Emcare, Inc.*, 299 F.Supp.2d 664, 665 (E.D. Tex. 2003) (cited by Defendants).

California (*Rosenberg v. IBM*) and settled for $65,000,000 in exchange for a general release of claims effective July 12, 2007 by all class members who failed to opt-out of the Rule 23 class. *Id.*, 1248-49.   The *Kuncl* opinion involved a discovery motion that was filed as a result of IBM's objections to Kuncl's discovery requests for information relating to events that arose before July 13, 2007, arguing that Kuncl's claims arising before July 13 were precluded by the judgment entered in the *Rosenberg* class/collective action he had participated in.

In deciding the preclusive effect of *Rosenberg* on Kuncl's subsequent claims, the court noted that the issue "appears to be one of first impression." *Id.,* 1250.  The court went on to hold that Kuncl could not sue IBM for claims he had expressly released by his participation in *Rosenberg*, but that his claims for wages <u>after</u> July 31, 2007 were <u>not</u> affected by his release in *Rosenberg*.[3]  Thus, though largely inapplicable to *Akins*, *even assuming entirely for the sake of argument* that any of the *Akins* Plaintiffs had previously participated in the *Altier* settlement, the decision in *Kuncl* would support a repeat-plaintiff pursuing their claims in this action arising after the date of the release in *Altier*.

### D.   The Eastern District's *Clay* Opinion Also Supports Plaintiffs.

Defendants also complain that there is nothing to prevent a third, fourth or fifth collective action against them.  If another collective action(s) were filed *while this action*

---

[3] Defendants' quotes from *Kuncl* are also taken out of context.  They suggest that *Kuncl* and *Hoffmann-La Roche* somehow stand for a proposition of limiting the <u>number of collective actions</u> under the FLSA.   In truth, Defendants' quotes from these cases are pulled from their discussions of the amendments to the FLSA through the Portal-to-Portal Act ("PPA") that limited "representative" actions to only those plaintiffs who "expressly opt-in to participate in the case."   *Kuncl*, 660 F.Supp.2d at 1253.  That is, the PPA added the opt-in procedure for FLSA collective actions.  Nothing in the PPA or the *Kuncl* or *Hoffmann-La Roche* cases can be said to limit the number of FLSA collective actions.

*was still pending*, the first-to-file rule would apply to the later action(s). (*See* Section II below for a further discussion of the inapplicability of the first-filed rule to the prior *Altier* case that is no longer pending.) But Defendants are correct that nothing (except for the statute of limitations) bars successive, later collective actions for their violations of the FLSA with respect to the evaluators who worked on the BP Spill. Defendants simply do not get a "get-out-of-jail-free card" for the balance of their FLSA violations just because they have been sued once before in a collective action.

Defendants cite *Clay v. Huntington Ingalls, Inc.*, Case 2:09-cv-07625[4] (E.D. La. Sept. 29, 2011) (Zainey, J.) as ostensible authority barring successive collective actions, merely because in *Clay* the court lauded the judicial efficiencies garnered by a collective action. The *Clay* case was filed by four named plaintiffs alleging they were required to work off-the-clock for pre-shift work and during meal breaks. *Id.*, 2. The opinion cited by Defendants entails the court's denial of the plaintiffs' Motion for Conditional Certification, finding the putative plaintiffs were not similarly situated.

As with all other cases Defendants cite, the court's statements praising the virtues of the collective action procedure <u>support</u> the continued maintenance of Plaintiffs' collective action and undermine Defendants' plea that the case instead be splintered into 227 separate cases. In particular, Judge Zainey noted the "[t]wo key purposes of the Act are reducing the burden on plaintiffs through the pooling of resources and efficiently resolving common issues of law and fact that arise from the same illegal conduct," that "[t]he FLSA is a remedial statute that should be liberally construed," and referenced the

---

[4] Plaintiffs have included copies of all unpublished opinions in their Appendix of Unpublished Authorities.

"economy of scale envisioned by the FLSA collective action procedure." *Id.*, 8. Judge Zainey further opined how "certification" of a FLSA collective action is a "wholly distinct concept" from certification in a Rule 23 class action, stating:

> "Unlike a Rule 23 class, certification of a collective action does not create a class of plaintiffs and it does not add plaintiffs to the case because § 216(b) expressly requires that each and every plaintiff affirmatively opt into the case in order to pursue his claims and obtain recovery. In fact, even in the absence of a certification order plaintiffs remain free to opt-in on their own so long as they are similarly situated to the named individual who brought the action."

*Id.*, 9 (citations and footnote omitted). *Clay* supports Plaintiffs' maintenance of a collective action.

### E.    The *Altier* Notice Was Effective In Resolving 538 Evaluator's Claims.

Defendants next argue that allowing this suit to proceed as a collective action "would eliminate the entire purpose of the first notice [in *Altier*] and render it ineffectual, serving to further undermine the collective action procedure." Doc. 38-1, pp. 4 & 7. This is complete nonsense. The *Altier* Notice was effective in joining together the claims of 538 plaintiffs whose claims were then settled by the parties.

### F.    Putative Plaintiffs Who Did Not Join *Altier* May Join This Matter.

#### 1.    <u>So far, 227 people have joined who elected not to join *Altier*</u>.

Defendants argue in bolded, underlined typeface that all of the putative plaintiffs already received the *Altier* Notice that allowed them to opt-in to a FLSA collective action and they "**<u>chose not to do [that] the first time</u>**," as if to suggest that a second Notice will not yield any additional claimants. Doc. 38-1, p. 8 (orig. emphasis). Perhaps the best proof that potential plaintiffs have had a change of heart (since the October 21, 2011 deadline to opt-in to *Altier*) about pursuing their FLSA claims against Defendants is the

fact that 227 people who chose not to join *Altier* have already decided to join this action, with the most recent joinder on January 7, 2013.

### 2. About 50% of the Plaintiffs were still working for Worley when the *Altier* opt-in period expired.

As specifically alleged in Plaintiffs' First Amended Complaint, "A significant number of Plaintiffs in this case were dissuaded from joining [*Altier*] by the prospect of losing their jobs or being blacklisted by Defendants."  Doc. 9, ¶5.  Defendants argue that "[c]onspicuously absent from the complaint in this action is any reference to the Plaintiffs' employment status at the time they received the Worley I Notice and allegedly feared retaliation."  Doc. 38-1, pp. 15-16.  Plaintiffs certainly are not trying to hide this information, which Defendants, of course, clearly already know as the former employer. Rather, Plaintiffs omitted reference to each plaintiff's start and end date simply because many people do not recall their precise dates of employment (particularly with a group of catastrophe claims adjusters who are typically nomadic and frequently move from job to job depending on the latest weather or environmental disaster).  If Defendants are being honest with the Court, they would have stated that about 50% of the existing Plaintiffs were still working for Worley at the time the *Altier* opt-in period expired.   If the Court feels this specific figure is necessary to continued maintenance of a collective action, Plaintiffs can amend their Complaint to include it.

### 3. *Sullivan* was pending when the *Altier* opt-in period expired.

Besides their then-current employment status with Worley, there are a myriad of other reasons why a person who decided against joining *Altier* may now want to join this action, such as changed financial circumstances.  Significantly, at the time the *Altier* opt-

in window ran, the State court class action against Worley for <u>breach of contract</u> in *Sullivan, et al. v. The Worley Companies, et al.*, Case 599055, 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana was pending.   *See Altier* Doc. 172 (Notice of Related Case).  The *Sullivan* case does <u>not</u> include any claims for unpaid overtime under the FLSA or state law.  For those who were tracking the *Sullivan* case (through, for example, the www.worleyclassaction.com website maintained by the *Sullivan* plaintiffs' attorneys, or by other means), it had been certified for class treatment on September 21, 2011 and the parties were still arguing over the contents of the Notice to class members when *Altier*'s opt-in window expired on October 21, 2011.  Some potential plaintiffs may have been hoping for passive participation in *Sullivan*'s class action (by failing to opt-out), rather than affirmatively opting into *Altier*.

**4.      The *Altier* settlement was posted on the internet.**

Additionally, though the settlement in *Altier* was confidential, blogs picked up on the settlement and posted articles about it on the internet.    For example, www.Law360.com posted a January 3, 2012 article about the settlement, and then a blog that is specifically for catastrophe claims adjusters (the "Dimechimes ClaimSmentor Adjustor Information Blog") picked up on and posted a link to the Law360 article.  *See* Exhibit 2.   There is nothing inappropriate – in fact, it is arguably more prudent – for a would-be plaintiff to see if a claim has any merit to it before filing the same claim for him or herself.  Thus, though Worley does not like it, there is nothing sinister or underhanded about a plaintiff changing his or her mind about bringing a particular claim after learning (or suspecting) that a settlement of the same claim was reached in another matter.

**G.      The Court Is Not "Stirring Up Unwarranted Litigation."**

Defendants next cite to four trial court opinions dealing with plaintiffs' Motions for Conditional Certification as a FLSA collective action and admonishing that a court cannot "stir[] up unwarranted litigation": *Xavier v. Belfor USA Group, Inc.*, 585 F.Supp.2d 873, 878 (E.D. La. 2008); *Valcho v. Dallas County Hosp. Dist.*, 574 F.Supp.2d 618, 622 (N.D. Tex. 2008); *Songer v. Dillon Res., Inc.*, 569 F.Supp.2d 703, 706-07 (N.D. Tex. 2008); and *Lentz v. Spanky's Rest. II, Inc.*, 491 F.Supp.2d 663, 669 (N.D. Tex. 2007).   These cases simply state the requirement that conditional certification/Notice is not automatic, and a court must satisfy itself that other "similarly situated" individuals exist and that they justify Notice because they may desire to opt-in.   First, Plaintiffs have not filed a Motion for Conditional Certification yet.   Second, it should be beyond dispute at this point that other similarly situated individuals exist – this Court previously held as much in the *Altier* case.   Third and finally, it is abundantly evident that other people may desire to opt-in to this action.   Thus, it simply cannot be said that the Court would be "stirring up unwarranted litigation" by denying Defendants' Motion to Dismiss.

Defendants are also wrong in their contention that allowing this collective action would "serve the same purpose" as the reminder notice that the Plaintiffs requested, but were denied, in the *Altier* case.   Doc. 38-1, p. 9.   The Notice for this case would undoubtedly make clear that it was for <u>this</u> case, and not *Altier* or any other matter, and also make clear that the Court is neutral and not encouraging or discouraging participation.   Plaintiffs cannot have their statutory rights abrogated based on a

nonsensical analogy likening their lawsuit to a reminder letter.  Defendants' comparison is not even an apples-to-oranges comparison, it is like comparing apples to broccoli.

### H.    *Akins* Is Particularly Well-Suited For Efficient Collective Treatment.

Defendants file this Motion presumably because they have little chance of avoiding certification.  Where substance fails to yield results, they attempt to invoke procedure by boldly seeking to deny Plaintiffs a collective action without any statutory backing, on-point case law, or reasonable policy justification.  The remedy they seek is **the epitome of judicial inefficiency, <u>227 separate cases instead of 1 case</u>**.  This hollow and ironic invocation of judicial efficiency is mere subterfuge to use this Court for harassment and retaliation.

### 1.    <u>Compensation decisions were made in lock-step.</u>

The Plaintiffs and putative Plaintiffs are very clearly similarly situated, as this Court has previously ruled.  All Plaintiffs worked as claims evaluators on a single project, the BP Spill.  They were all compensated on a per diem basis.  On at least three separate occasions in less than two years, Defendants uniformly changed their compensation for evaluators. On October 1, 2010, Defendants changed Plaintiffs' compensation to include $100 a day in their daily wages, rather than having those monies paid to evaluators as non-wages subject to an IRS Form 1099. Doc. 9, ¶226.   On February 1, 2011, Defendants' changed Plaintiffs' day rate to $425 per day, their hours were reduced to ten hours a day, and their work schedule decreased to six days a week.  *Id.*, ¶227.  Then in

September 2011, a memo was written changing[5] the evaluator's compensation scheme again, in an attempt to try to make Worley compliant with the FLSA. *Id.*, ¶283.

### 2.      Plaintiffs have demonstrated overwhelming interest.

Out of an approximate 760 remaining putative Plaintiffs after *Altier* settled, a staggering 227 Plaintiffs, or **29% of the putative class**, have already joined this action. In *Altier*, this Court found that 45 opt-ins joining was "persuasive evidence that a putative class does exist." *Altier* Doc. 171.  As already noted above, based on Plaintiffs' own recollections of their dates of employment, about 50% of them still worked for Worley after the opt-in deadline in *Altier* had expired on October 21, 2011, and many worked until the close of Worley's role in the BP Spill on June 1, 2012.

### 3.      Many Plaintiffs have claims that continued past settlement.

Many of the Plaintiffs have overtime claims that could not have been covered by the *Altier* settlement, because they worked for Worley after the opt-in deadline, and after the settlement was executed.  These Plaintiffs clearly had no opportunity to bring their overtime claims collectively.  Defendants' interpretation of the law in this context leads to particularly absurd results incentivizing continuing violations of the FLSA.

### 4.      This Motion is a subterfuge for harassment and retaliation.

The motivation for Defendants seeking judicial inefficiency has been clearly stated by Defense counsel in open court:  Defendants wish to avoid the normal discovery protections of the Federal Rules, take 227 depositions, and have individual discovery for

---

[5] In *Altier*, Defendants withheld evidence of these changes during the pendency of Plaintiffs' summary judgment motion and invoked the attorney-client privilege in depositions in response to questions regarding whether changes in the compensation scheme were set to occur.

the sake of unnecessarily harassing the Plaintiffs.  By separating the Plaintiffs, Defendants intend to avoid the normal representative discovery protections that collective action members enjoy. *See Falcon v. Starbucks, Corp.*, 580 F.Supp.2d 528, 530 (S.D. Tex. 2008) (18 opt-ins deposed from 355 member class with defendant choosing 10). Defense counsel has also stated that they will seek every Plaintiff's deposition in New Orleans, thus making it expensive for each Plaintiff to vindicate his or her rights. Because the Plaintiffs typically work as temporary workers on catastrophe projects, these depositions could force them to lose lucrative employment opportunities.  By forcing Plaintiffs to have their depositions taken in New Orleans and avoiding another collective action, Defendants hope to stem the tide of new Plaintiffs, cause others to quit the case, and drag out the case for as long as possible.

Furthermore, Defendants attempt at a harassing fishing expedition is rendered unnecessary because the <u>real</u> question in this case is whether Defendants' naked day rate compensation system can be construed as being paid on a "salary basis" under the FLSA. Plaintiffs had nothing to do with the workings and application of that compensation system and their depositions cannot render aid to Defendants on the <u>purely legal</u> question of whether that compensation system is valid under the FLSA.

## II.     THE FIRST-FILED RULE IS A RED HERRING.

Defendants use a bemusing range of selective citations to try to demonstrate that the first-to-file rule applies to *Akins* because of the prior filing of *Altier*; however, the first-filed doctrine is one of comity between courts when two separate cases are

*14*

**pending**.[6]  The rule does not apply to *Akins*, because *Altier* is not currently pending.  The Fifth Circuit has clearly delineated the limits of the first-to-file rule:

> "Under the first-to-file rule, when related cases are **pending** before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap."

*Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999).

### A.    Defendants' Requested Relief Does Not Match The Rule's Purposes.

As Defendants acknowledge, the three concerns of the first-filed rule are to (1) "avoid the waste of duplication;" (2) "avoid rulings which may trench upon the authority of sister courts;" and (3) "avoid piecemeal resolution of issues that call for a uniform result."  *Id.* (citing *West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985)).  Granting Defendants' relief mocks each of these concerns.  First, a "waste of duplication" would be a certainty with 227 Plaintiffs dismissed and free to file their cases in any state or federal court where they could establish venue.  At the very least, there will be duplicative cases and filings in the Eastern District of Louisiana, if not elsewhere.  Second, there is no risk that the authority of sister courts will be trenched because no other FLSA action against Defendants is pending at this time.  Finally, the relief Defendants seek aims to create "piecemeal" resolution rather than the "uniform results" envisioned by the first-to-file rule.

---

[6] Because the first-to-file rule is usually applied to Rule 23 class actions, and those actions typically have very low opt-out rates, it would be a rarity for a second class action to ensue after settlement.

**B.      Transfer, Not Dismissal, Is The Remedy For Second-Filed Cases.**

Further demonstrating that the first-to-file rule applies only to two **pending** cases,

the proper remedy is transfer of the case to the first-filed court.  The Fifth Circuit made

this clear in *Cadle* under the heading "**Transfer or Dismiss**" where the court held:

> "Cadle argues in the alternative that the district court should have transferred
> the case back to the Laredo division rather than dismiss it entirely.  We agree.
> '[T]he 'first to file rule' not only determines which court may decide the
> merits of substantially similar issues, but also establishes which court may
> decide whether the second suit filed must be dismissed, stayed or transferred
> and consolidated.'"

*Cadle*, 174 F.3d at 606 (5th Cir. 1999) (citing *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d

914, 920 (5th Cir. 1997)).

The cases Defendants cite from the Fifth Circuit all involve **transfers, not**

**dismissals**.  *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 952 (5th Cir. 1997);

*White v. Peco Foods, Inc.*, 546 F.Supp.2d 339, 343 (S.D. Miss. 2008);  *Benavides v.*

*Home Depot USA, Inc.*, 2006 WL 1406722, *2 (S.D. Tex. May 19, 2006); *see also*

*LaFleur v. Dollar Tree Stores, Inc.*, 2012 WL 2280090, *7 (N.D. Ill. June 18, 2012)

("*LaFleur I*").  Without another court with a pending case to transfer to, no relief can be

granted under the first-to-file rule.

**C.      *Ortiz*'s Dismissal Remedy Is Not Authorized By The Fifth Circuit.**

Rather than using clear Fifth Circuit precedent, Defendants rely on *Ortiz* and

*LaFleur II*, opinions from the Eastern District of Virginia dismissing a second filed case.

*Ortiz v. Panera Bread Co.*, 2011 WL 3353432, *7 (E.D. Va. Aug. 2, 2011); *LaFleur v.*

*Dollar Tree Stores Inc.*, Case 2:12-cv-00363 (E.D. Va. Oct. 2, 2012) ("*LaFleur II*").

*Ortiz* and *LaFleur II* would be overturned in this Circuit.  *See Cadle*, 174 F.3d at 606.

*Ortiz* and *LaFleur II* are also distinguishable <u>because they were dismissed for plaintiffs to join other pending actions</u>.  *Ortiz*, 2011 WL 3353432 at *7; *LaFleur II*, at 14.

### D.      Defendants' Remaining Authorities Miss The Mark.

Defendants' invocation of *Copello* and *Alvarez* also ring hollow.  *Copello* is cited for the proposition that "pursuing duplicative FLSA claims would advance, not detract from wise judicial administration."  Doc. 38-1, pp. 11-12.  *Copello* has no applicability to this case because it involves the dismissal of a single named plaintiff's claims because she had a FLSA case pending as an opt-in of another collective action in another forum at the time of dismissal.  *Copello v. Boehringer Ingelheim Pharm., Inc.*, 812 F.Supp.2d 886, 888-91 (N.D. Ill. 2011).  Defendants have never alleged that any Plaintiff in this case has ever been an opt-in in any other pending case.

Finally, *Alvarez v. Gold Belt, LLC*, 2011 WL 1337457 (D. N.J. Apr. 7, 2011) is simply a case about judicial comity being exercised when an identical first-filed case had been certified.  The court refused to grant the plaintiff certification of a class that covered a more expansive time period than in the first-filed case, reasoning that "[r]egardless of Judge Irenas's reasoning on the applicable date range, it is now the law of the case, which this Court will not disturb."  *Id.*, *2.

### III.    *ALTIER* CAN HAVE NO CLAIM OR ISSUE PRECLUSIVE EFFECT ON THE RIGHTS OF NON-PARTICIPANTS.

Defendants' contention that this collective action is barred by the doctrines of claim (*res judicata*) and issue (collateral estoppel) preclusion does not even pass the straight face test.  Other than cases that generally discuss these legal doctrines, the sole authority Defendants cite is the Northern District of Oklahoma's decision in *Kuncl*

(which is discussed in Section I(C), including how it would support even a repeat-plaintiff to participate in this action to the extent their overtime claim arose after the date of the release in *Altier*).  Nothing in *Kuncl* supports the application of the doctrines of claim or issue preclusion to the existing Plaintiffs, none of whom participated in *Altier*.

Additionally, as noted throughout this brief, several of the cases that Defendants cite concerning the positive attributes of a FLSA collective action emphasize the distinction between a collective action and traditional Rule 23 class action – including, specifically, how a FLSA collective action has no residual legal effect on non-participants.  *See, e.g., Recinos-Recinos,* 2006 WL 197030, * 8; *Belt*, 299 F.Supp.2d at 665; *Clay*, Case 2:09-cv-07625, p. 9.  The statutory text of the FLSA (as amended by the PPA) makes clear that a person must have opted-in to a FLSA action in order to be bound by it.  29 U.S.C. §216(b).

## IV.   DISMISSING COLLECTIVE ACTION CLAIMS DOES NOT MEAN PLAINTIFFS ARE MISJOINED.

Defendants' proposed relief of severance into 227 cases is also inappropriate because Plaintiffs should be allowed to permissively join their claims under Rule 20, even if their collective allegations are not allowed to proceed.  Joinder is appropriate when (1) claims arise out of the same transaction, occurrence, or series of transactions, and (2) there is at least one question of law or fact linking all of the claims.  FED. R. CIV. P. 20(a)(2); *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*,  2012 WL 1836114, *2-3 (E.D. La. May 21, 2012) (Vance J.).  "Because the purpose of Rule 20 is to facilitate trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits, district courts should liberally construe permissive joinder of claims and parties

in the interests of judicial economy." *West Coast Productions, Inc. v. Does 1-351*, 2012 WL 2577551, * 2 (S.D. Tex. Jul. 3, 2012).

Plaintiffs' claims arose out of the same transaction: Plaintiffs were uniformly compensated and compensation decisions were made in lock-step. Doc. 9, ¶¶224-27, 283; *see also Altier* Doc. 266, p. 9. Plaintiffs' claims are also linked by numerous questions of fact and at least one question of law regarding whether they were paid on a salary basis. In *Guedry v. Marino*, 164 F.R.D. 181, 184 (E.D. La. 1995) (Jones, J.), the court allowed seven plaintiffs to join together to allege constitutional violations after their commissions as deputies were not renewed. The court held that even though plaintiffs' claims had differing factual backgrounds, the allegations revolved around termination claims arising from First Amendment violations. *Id.*, 184-85. Here, Plaintiffs have an easier joinder case because their factual circumstances are identical: A single policy of paying a naked day rate, and subsequent and uniform compensation changes in that day rate, unite all of the Plaintiffs' claims rendering any severance judicially inefficient.

**V.      MIKE WORLEY IS A PROPER DEFENDANT.**

    **A.      Plaintiffs' Specific Factual Allegations Against Mike Worley.**

Plaintiffs' First Amended Complaint includes the following detailed factual allegations against Mike Worley:

- "Defendant Michael Allen Worley ('Mr. Worley') is an individual and the CEO and President, sole owner, and sole officer of both WCR and WCS." Doc. 9, ¶220.
- "At all relevant times, Mr. Worley acted and acts directly in the interests of Worley in relation to its employees. Thus, he was and is an employer of the Plaintiffs and others similarly situated, within the meaning of Section 3(d) of the FLSA (29 U.S.C. § 203(d)), and is jointly, severally, and individually liable along with Worley.

- Mr. Worley exercised operational control of Worley by, among other things, controlling the companies' finances, negotiating the contracts with Defendants' customers and by leasing facilities for Defendants' employees to work in.
- **Mr. Worley was the only one who had the authority to set and make changes to the compensation system Worley used for Plaintiffs, and others similarly situated.**
- Defendants paid a $450 day rate to Plaintiffs based on Defendants' tradition of paying that rate on environmental claims, with $100 of the $450 initially reported on a 1099 rather than as W-2 wages.
- When the IRS investigated Worley for its improper 1099 payments (discussed further below), Mr. Worley made the decision to resolve the Agency's claims and negotiated the settlement with the IRS.
- **Mr. Worley also changed employee compensation by reclassifying the $100 1099-payment per day of work into W-2 wages and Mr. Worley issued a memo to employees informing them of this conversion of 1099 payments to wages.**
- In February 2011, when Plaintiffs had their wages changed to $425 per day, Mr. Worley's direct reports, Allen Carpenter and Charlie Bilbe, changed the pay rates only because they had the approval of Mr. Worley.
- Mr. Worley is the ultimate decision maker with respect to the pay rates that classes of employees, such as the BP Oil Spill Project claims adjusters/evaluators, are paid." Doc. 9, ¶¶221-28 (emphasis added).
- "A memo that Michael Worley distributed in the Fall of 2010 about changes in the tax treatment of wages taking effect on October 1, 2010 and the discontinuance of paper payroll checks effective December 1, 2010 was on 'Worley Catastrophe Response' letterhead." Doc. 9, ¶237.

### B.  Under Fifth Circuit Caselaw, Mr. Worley May Be Held Liable.

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008).

In applying the "economic reality" test to determine whether an individual is an "employer" for purposes of the FLSA, the Fifth Circuit has recognized that the "dominant

theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012). For instance, in *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984), the Fifth Circuit held that an individual was an employer where "[i]t was only he who could authorize compliance with" the FLSA. *See also Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247, 253 (5th Cir. 2012) (citing *Donavan v. Grim Hotel*). Here, Mr. Worley <u>alone</u> determined the rate and method of payment for the Plaintiffs, and he even changed their compensation system on at least two occasions during the course of the BP Project. Doc. 9, ¶¶220-28, 237. Defendants falsely argue that Plaintiffs have not alleged that Mr. Worley "determined the rate and method of payment." Doc. 38-1, p. 19. They ignore the allegations that he "was the <u>only one</u> who had the authority to <u>set and make changes</u> to the compensation system Worley used for Plaintiffs, and others similarly situated," and that he, in fact, exercised his authority to make changes to Plaintiffs' compensation system on at least two occasions during the course of the Project. Doc. 9, ¶¶220-28 (emphasis added).

"[E]ach element [of the economic reality test] need <u>not</u> be present in every case." *Gray*, 673 F.3d at 357 (emphasis added).[7] Though Defendants argue that Plaintiffs did not explicitly allege that Mr. Worley "possessed the power to hire and fire the employees" (Doc. 38-1, p. 19), this power can readily be inferred from the fact that he was the <u>sole</u> owner and officer of Worley and that he exercises "operational control" over

---

[7] *See also Cooke v. Jaspers*, 2010 WL 918342, * 5 (S.D. Tex. Mar. 10, 2010) (cited by Defendants) ("The determination of an employment relationship 'does not depend on . . . isolated factors but rather upon the circumstances of the whole activity.'") (quoting *Rutherford Food v. McComb*, 331 U.S. 722, 730 (1947)).

Worley.  In the event the Court believes it is necessary for Plaintiffs to explicitly allege this factor, Plaintiffs can, for example, even allege the specific example that Mr. Worley personally hired his personal airplane pilot to work as an evaluator on the BP Project (even though the pilot had no insurance claims adjusting experience).  Plaintiffs request leave to amend their Complaint in the event the Court is inclined to grant Mr. Worley's Motion to Dismiss (in spite of the detailed factual allegations that he, and he alone, set the method of pay for Plaintiffs that is at the heart of this case).

### C.      Defendants' Cases Are Easily Distinguishable.

The Southern District of New York opinion that Defendants rely upon opens with the court scolding plaintiffs and their counsel (e.g., "*Here we go again....*") for filing a "dozen" similar actions around the country against numerous entities and individuals, including three earlier actions in which the <u>same</u> court had previously dismissed "a dozen separate claims these plaintiffs asserted against these defendants," which dismissals were still pending plaintiffs' appeal when plaintiffs initiated new actions.  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, Case 1:11-cv-06658 (S.D. N.Y. Sept. 6, 2012). In dismissing six individually named defendants, the court emphasized that plaintiffs alleged merely that these individuals had the "authority," given their executive status, to make employment decisions affecting the plaintiffs.  *Id.*, 21.   In stark contrast to the present action, the *Nakahata* plaintiffs had not "alleged facts to plausibly show that the individual defendants knew of, let alone created or maintained, the purported unlawful policies."  *Id.*, 21-22.  For some of the individual defendants, their <u>corporate employers</u> had been <u>dismissed</u> because the plaintiffs had failed to allege sufficient facts to show that

the entities employed plaintiffs, "and thus there can be no plausible suggestion that their employees [listing the individuals] set the relevant policies or otherwise qualify as plaintiffs' employers here." *Id.*, 22.  The *Nakahata* opinion is easily distinguished from this case.

Sticking with New York cases against hospitals and related health care entities, Defendants next discuss *Wolman v. Catholic Health System of Long Island, Inc.*, 853 F.Supp.2d 290 (E.D. N.Y. 2012), in which the court observed that the FLSA's definition of "employer" is "'necessarily a broad one, [8] in accordance with the remedial purpose of the FLSA.'"  *Id.*, 297 (quoting *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003)).  As in the *Nakahata* opinion, the court had <u>dismissed the corporate entity</u>, and thus, "[w]hile [his] position and responsibilities as President, CEO, and Director of CHS may support holding [him] individually liable for CHS's FLSA violations, all claims against CHS have been dismissed."  *Id.*, 300.  For the remaining corporate entity, the complaint did not contain any facts regarding his role, if any, at that hospital, including being "void of facts that [he] had 'operational control' over Good Samaritan."  *Id.*, 299-300.  *Wolman* is also substantively distinguishable.

In *Kaminski v. BWW Sugar Land Partners*, 2010 WL 4817057 (S.D. Tex. Nov. 19, 2010), the court granted leave to amend where the plaintiffs named fifty-one (51) individual defendants but failed to even allege the identity of the restaurants where they worked.  *Id.*, *1.  "Instead, all allegations concerning violations of the FLSA [were] made

---

[8] *See also Hart v. Rick's Cabaret Int'l, Inc.*, 2010 WL 5297221, *2 (S.D. N.Y. Dec. 20, 2010) ("'The terms [employer] are to be expansively defined, with 'striking breadth,' in such a way as to 'stretch . . . the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles.'").

globally against all defendants." *Id.*  The court held that plaintiffs' general allegation that they "worked for" defendants was not enough. *Id.*, *2.  In its opinion, the court quoted from the Fifth Circuit's decision in *Donavan v. Grim Hotel* holding that a person with "'operational control of a corporation's enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" *Id.* (quoting *Donavan v. Grim Hotel*, 747 F.2d at 971-72).  Here, Plaintiffs have alleged (based on the deposition testimony in the *Altier* case) that "Mr. Worley exercised operational control of Worley by, among other things, controlling the companies' finances, negotiating the contracts with Defendants' customers and by leasing facilities for Defendants' employees to work in."  Doc. 9, ¶222.

The *Kaminski* court further noted that under Fifth Circuit precedent, "'[t]he definition of employer is broad enough to encompass an individual, who although lacking a possessory stake in the corporation, 'effectively dominate[s] [the corporation's] administration or otherwise acts, or has the power to act, on behalf of the corporation vis-à-vis its employees.'" *Id.*, *2 (quoting *Reich v. Circle C. Inv., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993)) (first alteration added).  Here, as alleged by Plaintiffs, Mr. Worley was the "sole owner, and sole officer of both WCR and WCS."  Doc. 9, ¶220.

*Cooke v. Jaspers*, 2010 WL 918342 (S.D. Tex. Mar. 10, 2010) does not advance Defendants' position either.  *Cooke* granted leave to amend where plaintiffs' allegations against a corporate entity, added over 18 months after the suit was filed, included merely that the company had "purchased certain assets of ECI – asserted to be vehicles and office equipment – when ECI stopped doing business in its Texas location." *Id.* at *1.

Finally, *Hart v. Rick's Cabaret International, Inc.*, 2010 WL 5297221 (S.D. N.Y. Dec. 20, 2010) does not support dismissal of Mr. Worley. *Hart* involved the question of the "employer" status <u>of a corporate parent company</u>. Moreover, the excerpt from the case that Defendants cite is actually within the court's discussion of <u>old</u> procedural history in the case. In the *Hart* opinion that is cited, the court <u>denied</u> the parent company's motion to dismiss, quoting *Twombly* and stating, "Taken as a whole, these allegations 'raise a reasonable expectation that discovery will reveal evidence' that RCII is an 'employer' of the plaintiffs and the members of the putative class within the meaning of the FLSA." *Id.,* *3 (quoting *Twombly*, 550 U.S. at 556). Here too, Plaintiffs have *clearly* alleged sufficient facts to "nudge [their] claims [against Mr. Worley] across the line from conceivable to plausible," and to raise their "right to relief [against him] above the speculative level." *See Twombly*, 550 U.S. at 555 & 570.

## VI.   CONCLUSION.

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety. In the event the Court is inclined to grant any portion of Defendants' Motion, Plaintiffs respectfully request an opportunity to amend.

RESPECTFULLY SUBMITTED,

     */J.P. Hughes, Jr./*
**J.P. Hughes, Jr.**
LA Bar # 21302
**HUGHES BROWN, PLLC**
1300 Access Road, Suite 100
Oxford, Mississippi 38655
T: [662] 234-6080
F: [800] 515-5446

**Michael A. Starzyk**
TX Bar # 00788461*
**April L. Walter**
TX Bar # 24052793*
**Hessam Parzivand**
Texas Bar # 24071157*
**STARZYK & ASSOCIATES, P.C.**
10200 Grogan's Mill Road, Suite 300
The Woodlands, Texas 77380
T: [281] 364-7261
F: [281] 364-7533

**Joseph E. Fieschko Jr.**
PA Bar # 28797*
**FIESCHKO AND ASSOCIATES, NC.**
2230 Koppers Building
Pittsburgh, Pennsylvania 15219
T:  [412] 281-2204
F:  [412] 338-9169

**John R. Linkosky**
PA Bar # 66011*
**JOHN LINKOSKY & ASSOCIATES**
715 Washington Avenue
Carnegie, Pennsylvania 15106
T:  [412] 278-1280
F:  [412] 278-1282

*Admitted Pro Hac Vice*

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of January, 2013, I served the foregoing on the

following in accordance with the Federal Rules of Civil Procedure:

**Jennifer L. Anderson**
Jones, Walker, Waechter, Poitevent,
  Carrere & Denegre, LLP
Four United Plaza
8555 United Plaza Boulevard
Baton Rouge, Louisiana 70809-7000
E-mail:  janderson@joneswalker.com
[**Via E-file**]

**James R. Lewis**
Crawford Lewis
450 Laurel Street, Suite 1600
Baton Rouge, Louisiana 70801
E-mail:  jlewis@crawford-lewis.com
 [**Via E-file**]

**COUNSEL FOR DEFENDANTS**

**Mary Margaret Spell**
Jones, Walker, Waechter, Poitevent,
  Carrere & Denegre, LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
E-mail:  mspell@joneswalker.com
[**Via E-file**]

_____/J.P. Hughes, Jr./_____
J.P. Hughes, Jr.