UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN AKINS ET AL.                      CIVIL ACTION

VERSUS                                 NO. 12-2401

WORLEY CATASTROPHE                     MAGISTRATE JUDGE
RESPONSE, LLC ET AL.                   JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTION

John Akins and 179 other named plaintiffs, individually on and on behalf of all
those similarly situated,[1] filed this putative collective action under the Fair Labor
Standards Act ("FLSA"), 29 U.S.C. § 216(b).  Plaintiffs allege that their former
employers, Worley Catastrophe Response, LLC, Worley Catastrophe Services, LLC
(collectively "Worley") and Michael Allen Worley ("Mr. Worley"), failed to pay them
overtime wages as required by the statute.  This matter was referred to a United States
Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C.
§ 636(c), upon the written consent of all parties.  Record Doc. No. 26.

Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), seeking
dismissal of (1) the putative collective action claim on the ground that plaintiffs are not
entitled to pursue a second collective action against Worley based on the same claim as
a previous collective action in this court, which was settled before the instant action was

---

[1]Additional plaintiffs have filed consent forms to opt in to the putative collective action,
bringing the total number of plaintiffs to 227 as of January 8, 2013.  Plaintiffs' memorandum in
opposition to defendants' motion to dismiss, Record Doc. No. 42 at p. 7.

filed; and (2) plaintiffs' claims against Mr. Worley because plaintiffs have failed to allege sufficiently that this defendant was their "employer" for purposes of the FLSA.  Record Doc. No. 38.

Plaintiffs filed a timely opposition   memorandum.   Record Doc. No. 42. Defendants received leave to file a reply memorandum.  Record Doc. Nos. 44, 45, 46.

Having considered the complaint, as amended, the submissions of the parties and the applicable law, IT IS ORDERED that the motion is DENIED, for the following reasons.

A.    Standards for Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to "contain a short and plain statement of the claim showing that the pleader is entitled to relief. . . .  [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quotations omitted).  A plaintiff "need not allege in her complaint every fact that she might need to prove to prevail on the merits. . . .  This simplified notice pleading standard need only give a defendant fair notice of what the plaintiff's claim is and the grounds upon which rests.  The liberal discovery rules and summary judgment motions are then employed to explore the details of the claim."  Goss v. Hardy Energy Servs., Inc., No. 09-0443, 2010 WL 427748, at *2 (W.D. La. Feb. 3, 2010) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002));

2

accord Lovick v. Ritemoney Ltd., 378 F.3d 433, 438 (5th Cir. 2004). Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted. Turner v. Pleasant, 663 F.3d 770, 775 (5th Cir. 2011).

The Supreme Court recently clarified the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."

Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 796 (5th Cir. 2011) (quoting Iqbal, 556 U.S. at 678) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007))).

"[A] court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving the Plaintiff an opportunity to amend." Litson-Gruenber v. JPMorgan Chase & Co., No. 7:09-cv-056-0, 2009 WL 4884426, at *6 (N.D. Tex. Dec. 16, 2009) (citing Hart v. Bayer Corp., 199 F.3d 239, 248 n.6 (5th Cir. 2000)); accord Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002); Linck v. Brownsville Navig. Dist., 4 F.3d 989, 1993 WL 360773, at *4 (5th Cir. 1993).

B.      Procedural Background

Section 216(b) of the FLSA grants employees a cause of action to recover overtime compensation and liquidated damages against an employer who violates the statute by failing to pay required overtime.  Such an action may be brought individually and/or as a collective action on behalf of those similarly situated.

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  Thus, "prospective claimants <u>must</u> <u>opt-in</u> under the FLSA, fundamentally distinguishing these suits from Rule 23 class actions in which a prospective plaintiff must opt-out.  <u>Collective actions bind only the opt-in plaintiffs.</u>" <u>Roussell v. Brinker Int'l, Inc.</u>, 441 F. App'x 222, 225 (5th Cir. 2011) (citing <u>Sandoz v. Cingular Wireless LLC</u>, 553 F.3d 913, 916 (5th Cir. 2008)) (emphasis added).

Worley seeks dismissal of plaintiffs' putative collective action claim in the instant case.  Worley argues that plaintiffs may pursue their FLSA claims individually, but are not entitled to bring a collective action based on the same factual claim that was asserted by other plaintiffs in a previous collective action in this court, <u>John J. Altier, et al. v. Worley Catastrophe Response, LLC, et al.</u>, Civil Action No. 11-241, consolidated with No. 11-242, which was settled before the instant lawsuit was filed.  The collective action

group in <u>Altier</u> was defined identically to the proposed group in the instant action as "all present and former employees of Defendants who have held the position of claims adjuster/evaluator, or who have performed duties similar to the duties performed by the Plaintiffs since June, 2010."   Second Amended Individual and Collective Action Complaint, Record Doc. No. 110, ¶ 92 in <u>Altier</u>, C.A. No. 11-241; First Amended Individual and Collective Action Complaint, Record Doc. No. 9, ¶ 293, in <u>Akins</u>, C.A. No. 12-2401.  The allegations of unpaid overtime pay in the two lawsuits are identical, the two corporate defendants are identical (Mr. Worley was not a defendant in <u>Altier</u>), and plaintiffs in both cases are represented by the same attorneys.

After this court conditionally certified <u>Altier</u> as a collective action in July 2011, a court-approved notice was sent to more than 1,300 claims adjusters comprising the defined group, which included all of the named and opt-in plaintiffs in the current <u>Akins</u> action.  The notice advised the members of the pendency of the action, their legal rights and the October 21, 2011 deadline to opt in.  The notice stated, among other things:

5. **EFFECTS OF JOINING THIS SUIT.**
If you choose to join in this suit, you will be bound by the Judgment, whether it is favorable or unfavorable. . . .
6. **NO LEGAL EFFECT IN NOT JOINING THIS SUIT.**
If you choose not to join the Overtime Action, you will not be affected by any judgment or settlement rendered the case, whether favorable or unfavorable to the collective action groups.
If you choose not to join the Overtime Action, you are free to file your own lawsuit under the FLSA.

C.A. No. 11-241, Record Doc. No. 191, at pp. 3-4 (emphasis in original).  Only one of the 227 <u>Akins</u> plaintiffs, Gregory Farve, previously consented to join in <u>Altier</u>.

Worley settled with all of the plaintiffs who had opted in and who chose to participate in the final settlement agreement in <u>Altier</u>.  The court approved the parties' settlement agreement on January 18, 2012.  <u>Altier</u>, C.A. No. 11-241, Record Doc. No. 312.  On August 6, 2012, the collective action was dismissed with prejudice as to all "Participating Plaintiffs," who were defined as those opt-in plaintiffs who had returned the form specified in the Confidential Settlement Agreement to the third-party administrator by the court-ordered deadline.  <u>Altier</u>, C.A. No. 11-241, Record Doc. No. 316 at p. 1.  The claims of six named "Non-Participating Plaintiffs" who had opted in to the action but had not returned the settlement participation form by the deadline (including Gregory Farve), were "DISMISSED WITHOUT PREJUDICE to any rights such Non-Participating Plaintiffs may have either to re-file such claims in the United States District Court for the Eastern District of Louisiana or to pursue their individual claims either in the existing cases or elsewhere." <u>Id.</u>  Worley argues that this language in the final order of dismissal limits the estimated 800 putative plaintiffs in the instant action to bringing individual claims only and prevents them from maintaining another putative collective action.

C.      The FLSA Does Not Prohibit a Collective Action in this Case

Worley argues that the Akins plaintiffs cannot bring a second putative collective action against them based on the same factual allegations as in Altier because these plaintiffs had the chance to opt in to the earlier case, but chose not to do so.  Worley makes three arguments:  (1) the purpose and policy of Section 216(b) permit only one collective action based on the same alleged violations, (2) the first-filed rule precludes a second collective action, and (3) the doctrines of claim and/or issue preclusion prevent the second action in this case.

First, Worley argues that the "judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989) (emphasis added by Worley).  Defendant states that the FLSA provides that "[a]n action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b) (emphasis added by Worley).  Worley argues that the emphasized words in the statute and in the Supreme Court's opinion quoted above mean that only one collective action can ever proceed based on the same transactions.  Defendant contends that the current plaintiffs, who received notice of the Altier action but chose not to opt in, are barred from bringing a later collective action because allowing them to do so would render ineffective the notice

7

sent in the first action and would involve the court in stirring up litigation if a second collective action was conditionally certified and notice sent again. Worley posits that, if a second action is allowed to proceed, nothing prevents other plaintiffs from filing a third, a fourth and more putative collective actions based on the same facts. It contends that allowing repetitive collective actions will dissuade defendants from settling such actions.

Neither the statute nor the cases cited by Worley support its arguments against allowing the instant action. "The starting point in discerning congressional intent is the existing statutory text." Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004). "'[W]hen the statute's language is plain, the sole function of the courts–at least where the disposition required by the text is not absurd–is to enforce it according to its terms.'" Id. (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 540 U.S. 526, 534 (2000)).

The FLSA "is a remedial statute that '"has been construed liberally to apply to the furthest reaches consistent with congressional direction."'" Prickett v. DeKalb County, 349 F.3d 1294, 1296 (11th Cir. 2003) (quoting Johnston v. Spacefone Corp., 706 F.2d 1178, 1182 (11th Cir. 1983) (quoting Mitchell v. Lublin, McGaughy & Assocs., 358 U.S. 207, 211 (1959))); see also Herman v. Fabri-Centers Am., Inc., 308 F.3d 580, 585-86 (6th Cir. 2002) (quoting Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944)) (The "FLSA is 'remedial and humanitarian in purpose,' and 'must not be interpreted or applied in a narrow, grudging manner.'"). The Fifth Circuit

8

instructs its district courts to "construe the FLSA liberally in favor of employees." Allen v. McWane, Inc., 593 F.3d 449, 452 (5th Cir. 2010) (quotation omitted).

The plain language of Section 216(b) does not prohibit employees from bringing more than one collective action based on the same alleged violations. Yates v. Wal-Mart Stores, 58 F. Supp. 2d 1217, 1218 (D. Colo. 1999).  I find nothing in the phrase "an action to recover" or elsewhere in the statute that limits to one the number of collective actions that "may be maintained against any employer."  Section 216(b) allows "any one or more employees for and in behalf of himself or themselves and other employees similarly situated" to bring an action.  29 U.S.C. § 216(b) (emphasis added).  Contrary to defendant's restrictive reading, this language can be read to permit more than one collective action by any one, or more than one, employee or group of employees.  Had Congress wished to limit the number of collective actions that could be brought against an employer, it could have said that only "one action to recover" may be maintained on behalf of a group of employees.  It did not do so.  The only statutory restrictions on collective actions are that all defendants must be an "employer," all plaintiffs must file written consent forms to participate, and the action must be filed within the applicable statute of limitations.  Thus, construing Section 216(b) liberally in favor of employees, I find that the statute permits plaintiffs to file the instant putative collective action and that such a reading of the text does not lead to absurd consequences.

Absent this holding, each of the estimated 800 putative <u>Akins</u> plaintiffs, or at least the 227 who have already opted in, would be required to file an individual action to recover any relief.  As the Eleventh Circuit stated in rejecting a defendant's argument that plaintiffs who had opted in were required to file new consent forms after the named plaintiffs amended the complaint to include new claims or that, failing such a filing, they must file individual actions, "the number of lawsuits necessary to litigate the same end result would be multiplied.  Absent indication that Congress wanted such an inefficient result–and here all the indication is that it did not–we will not adopt a rule that would bring it about."  <u>Prickett</u>, 349 F.3d at1297.  That reasoning applies equally in the instant case.

As to Worley's second argument, it is true that courts commonly dismiss a later filed case in favor of an earlier filed one based on the same factual claims, but usually when two such actions are pending <u>at the same time</u>.  In the Fifth Circuit,

> [t]he first-to-file rule is a discretionary doctrine . . . .
> Under the first-to-file rule, when related cases **are pending** before two federal courts, the court in which the case was last filed **may** refuse to hear it if the issues raised by the cases substantially overlap.  The rule rests on principles of comity and sound judicial administration.  The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.
> . . . .
> . . . .  Courts use this rule to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case <u>pending</u> in another court.

Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 603 (5th Cir. 1999) (citing

Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183-84 (1952)) (quotation

and additional citations omitted) (bold emphasis added; underlined emphasis in original).

Because the Akins plaintiffs waited until after Altier had been finally dismissed to file

the instant action, no other pending collective action suggests that the first-filed rule

should be invoked.

Worley cites Alvarez v. Gold Belt, LLC, No. 08-4871(NLH)(KMW), 2011 WL

1337457 (D.N.J. Apr. 7, 2011), as an example of the first-to-file rule applied in an FLSA

putative collective action. The court in the second-filed action recounted that it had

previously denied without prejudice plaintiffs' motion to certify a collective action in that

case because "judicial comity–under the principles of the first-filed rule and law of the

case doctrine–required this Court to defer to Judge Irenas in the essentially identical case

filed first before him, Manning v. Gold Belt Falcon, LLC," in the same court. The judge

in the second case noted that, in denying plaintiffs' first motion for a collective action,

the court had found that

> the plaintiffs are essentially the same, the defendants are the same, and the
> claims are the same, [and] this case presents the potential for the waste of
> judicial resources and the duplication of two courts' efforts. The Court also
> found that a failure to defer to the first-filed case would have the potential
> for inconsistency in the determination of the legal issues, which would
> cause turmoil for the parties and for the state of the law.

Id. at *1 (quotation omitted).  After the denial without prejudice of the certification

motion in Alvarez, the judge in the first-filed Manning case conditionally certified a

group of workers based on events from February 22, 2007 to the present.  Alvarez then

moved in his second-filed case to conditionally certify a group with claims dating from

October 29, 2005 through February 22, 2007.  The Alvarez court denied the motion,

reasoning that

> the identity of the collective actions again demonstrates the need for one
> court to handle these claims.  Any ruling in this action on any issue, such
> as the viability of the FLSA claims, how notice is disseminated to the class,
> or whether the collective action class will be certified beyond the
> conditional approval, could conflict with Judge Irenas's findings on the
> same issues in the case before him.
>     . . . .
>     The issue of the differing employment periods between the two
> collective actions does not change this analysis. . . .
>     Regardless of Judge Irenas's reasoning on the applicable date range
> [for the conditionally certified group in Manning], it is now the law of the
> case, which this Court will not disturb. . . .  If counsel believe that the
> collective action should span back to October 29, 2005, they should raise,
> or should have raised, that concern before Judge Irenas.  They cannot,
> however, seek to expand the class through the certification of a separate
> collective action, which in all other respects is identical to the one already
> conditionally certified.

Alvarez, 2011 WL 1337457, at *2.  "Because the Manning action has been conditionally

certified, plaintiff must choose between opting in to that action, or continuing

independently with his own action here.  Certification of a separate collective action is

not available to plaintiff at this time."  Id. (emphasis added).  Thus, unlike plaintiffs in

the instant case, the plaintiffs in Alvarez still had time to opt in to the first-filed, pending case.

The other decisions cited by Worley also involved cases in which the later action was either dismissed in favor of or transferred to the court where the first action had been filed and was still pending.  See Save Power Ltd. v. Syntek Finance Corp., 121 F.3d 947, 950-52 (5th Cir. 1997) (in action between lenders regarding subordination agreement, ordering transfer of later-filed case to judge in same district before whom first-filed case was pending); LaFleur v. Dollar Tree Stores, Inc., No. 2:12-cv-00363, 2012 WL 4739534, at *8 (E.D. Va. Oct. 2, 2012) (in FLSA action, "dismissal is appropriate as Plaintiffs and any putative collective members can opt-in to the [first-filed] action" in different federal court); Copello v. Boehringer Ingelheim Pharm. Inc., 812 F. Supp. 2d 886, 888-90 (N.D. Ill. 2011) (dismissing plaintiff's collective action claim because she had already opted in to first-filed, ongoing FLSA action in different federal court); Ortiz v. Panera Bread Co., No. 1:10CV1424, 2011 WL 3353432, at *2-3 (E.D. Va. Aug. 2, 2011) (granting defendant's motion to dismiss so that plaintiffs can join in the first-filed collective action, which the parties were attempting to settle); White v. Peco Foods, Inc., 546 F. Supp. 2d 339, 343 (S.D. Miss. 2008) (granting motion to transfer case to venue of first-filed FLSA action); Benavides v. Home Depot USA, Inc., No. H-06-0029, 2006 WL 1406722, at *1-2 (S.D. Tex. May 19, 2006) (transferring plaintiff's collective action claims to court where identical FLSA action was first filed).

As these decisions illustrate, no purpose would be served by allowing two collective actions based on the same claims to proceed concurrently, with the attendant increased expense for defendants, the risk of confusing the group members about their legal options, the possibility of inconsistent rulings by two courts and the waste of judicial resources.  In addition, the parties are not prejudiced by the court's refusal to maintain the second action in these cases.  When a first-filed collective action is certified, all members of the certified group will receive notice and have the opportunity to opt in to that action, if they choose; they can bring individual actions; or they can choose to do nothing, knowing that they will not be bound by any judgment in the first-filed collective action.  Thus, plaintiffs in a subsequent collective action based on the same claims as the first-filed action are not prejudiced by dismissal of their later-filed, simultaneously proceeding, collective action.

Defendants in subsequent collective actions are also protected against having to defend a second, third or fourth collective action at the same time as the first-filed case by the applicable statute of limitations, which continues to run against any plaintiff who does not file written consent to opt in, and by the judicial policies against duplicative litigation, such as the first-to-file rule and the rule against claim-splitting.   While employers may be discouraged from settling collective actions, as Worley argues, when they know that another such action can still be brought at a later date, that is a policy argument that finds no support in the language of Section 216(b).  Any such argument

"should be made to the legislature and not to the courts." LaChapelle v. Owens-Ill., Inc., 513 F.2d 286, 287, 289 (5th Cir. 1975).

Worley has cited, and my research has located, no decisions that discuss whether a second putative collective action can be maintained when it is filed after the first collective action had been resolved, as has occurred here. My own research has located only two cases that address whether a second action may proceed while the first was still pending in the somewhat analogous situation in which the opt-in deadline for the first-filed collective action had already passed, and the two cases have conflicting results.

In Greene v. H& R Block E. Enters, Inc., 727 F. Supp. 2d 1363 (S.D. Fla. 2010), the court dismissed a second-filed putative collective action, stating that "a district court has authority as part of its inherent power over its docket administration to stay or dismiss a suit that is duplicative of another case then pending in federal court." Id. at 1367 (citing Curtis v. Citibank, 226 F.3d 133, 138, 140 (2d Cir. 2000); Zephyr Aviation III, L.L.C v. Keytech Ltd., No. 07-227, 2008 WL 759095, at *1 (M.D. Fla. Mar. 20, 2008)). The court did not rely on the language of Section 216(b) for its decision, but on the policy against claim-splitting, which "ensures that a plaintiff may not 'split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails.'" Id. (quoting Stark v. Starr, 94 U.S. 477, 485 (1876)). The second Greene action was filed in the same court by the same plaintiffs' counsel against the same defendants.

15

The complaint asserted claims arising from the same series of transactions and sought the same relief as the first-filed action.  Several of the named plaintiffs in the second action had already opted in to the conditionally certified first action.  Id.

    The court in Greene denied plaintiffs' request to consolidate their action with the first action instead of dismissing the second.  The court emphasized

> that any individual interested in joining Illano [the first-filed action] as a similarly situated conditional plaintiff was required to do so by June 4, 2010.  It is clear from the record before this Court that at least seven of the Plaintiffs in the instant matter opted-in as conditional plaintiffs in the Illano suit.  Consolidating the instant matter with Illano would have the unacceptable consequence of allowing additional conditional plaintiffs to join Illano beyond this Court's mandated deadline for doing so.  The Court will not permit such back-door entry into a conditional class that has been closed after an appropriate notice period.

Id. (citing Adams v. Cal. Dep't of Health Svcs., 487 F.3d 684, 688 (9th Cir. 2007)) (emphasis added).

    The court observed that plaintiffs in the dismissed case would not be left without a remedy because they

> retain the ability to pursue individual action if they are so inclined, so long as any action complies with procedural safeguards and limitations. Moreover, aside from individual rights to sue that are available, both parties also agree that there is ongoing multi-district litigation in other states regarding H & R Block's compliance with the FLSA as it pertains to H & R Block's training compensation, which may afford claimants an opportunity to opt-in to ongoing conditional certification proceedings."

Id. (citing Lusardi v. Lechner, 855 F.2d 1062, 1067-69 (3d Cir. 1988); Bamgbose v. Delta-T Group, Inc., 724 F. Supp. 2d 510, 513-16, No. 2010 WL 2649925, at *2-3 (E.D. Pa. June 30, 2010)) (emphasis added).

Greene is distinguishable from the instant case.  First, the Greene complaint was filed only two weeks before the deadline to opt in to Illano, the previously filed, already certified collective action.  Defendants promptly filed their motion to dismiss in Greene and the court ruled one month later, a mere seven weeks after the opt-in deadline in Illano had expired.  In these circumstances, the court had a strong interest in enforcing its opt-in deadline and used its "inherent power" to prevent an untimely "back-door entry into a conditional class that has been [recently] closed."  Id.  Second, the court acknowledged that the Greene plaintiffs may be able to opt in to another pending collective action, making it like the other cases discussed above that followed the first-filed rule where other similar cases were pending concurrently.  In the instant case, however, the deadline to opt in to Altier expired on October 21, 2011, almost one year before Akins was filed.  Altier has been finally resolved and dismissed.  Thus, no other action is pending that would allow plaintiffs to opt in.

The court in Yates v. Wal-Mart Stores, 58 F. Supp. 2d at 1217, denied defendants' motion to dismiss plaintiffs' second-filed FLSA collective action, based on the court's examination of the statutory language.  Defendants argued that multiple actions could not proceed when "a separate collective action with identical issues is already before this

Court.  Moreover, each of the plaintiffs was given the opportunity to opt-in to [the first]

Wal-Mart [collective action] by the Court[-]imposed December 2, 1996, cut off date and

chose not to do so."  Id. at 1218 (citing In re Wal-Mart Stores, 58 F. Supp. 2d 1219 (D.

Colo. 1999), rev'd on other grounds, 395 F.3d 1177 (10th Cir. 2005)).  Defendants in

Yates argued that Section 216(b) does not permit a second collective action and that,

even if the FLSA does allow a second action to proceed, the court should exercise its

inherent authority to manage its docket and dismiss the second action because of the cost

imposed on defendants by making them defend two separate collective actions.  The

court disagreed:

> After examining the statute, there is no indication that a second collective
> action was intended to be barred.  Unlike [Fed. R. Civ. P.] 23, the opt-in
> provision of section [216][2] provides for no legal effect on those parties who
> choose not to participate.  As the Magistrate Judge correctly noted, "there
> is nothing in the language of the FLSA which would suggest a
> Congressional intent to absolutely preclude FLSA claims by those who
> receive notice of a collective action, but fail timely to opt in."
> Recommendation at 7.  As each plaintiff could, therefore, file his or her
> own suit, judicial efficiency demands that, if possible, these individual suits
> be consolidated.  The opposite conclusion could lead to a party having to
> defend itself in not two, but potentially hundreds of identical lawsuits.
> Moreover, the Court does not believe that this decision will promote
> multiple collective actions.  The disadvantages inherent in being a party to

---

[2]The decision actually said "section 213," but this is clearly a typographical error.  Section
213 of the FLSA deals with exemptions from the overtime and minimum wage requirements, while
Section 216 is the opt-in provision of the statute that the court was analyzing in the quoted
paragraph.  Accordingly, I inserted "216" in place of "213" in the quotation.

a "tag-along" litigation are sufficient to discourage parties from regularly
engaging in this type of activity.

Id. (emphasis added).

As previously discussed, I agree with the Yates court that the language of Section
216(b) does not prohibit a second collective action. In addition, unlike the time line in
Greene, the opt-in deadline in the first Wal-Mart collective action had expired two years
before the magistrate judge issued his report and recommendation in Yates, and it was
another eight months before the district judge ruled. These procedural circumstances are
more like those in the instant case than those in Greene. I am not persuaded by Worley's
arguments that the instant action should be dismissed so that plaintiffs could file
hundreds of individual actions, instead of resolving their claims in one collective action
that is not barred by the statute.

Worley also argues, based on the settlement agreement in Altier, that the doctrines
of claim and/or issue preclusion bar plaintiffs from bringing the instant collective action.
Defendant admits that those doctrines have no effect on plaintiffs' rights to bring their
FLSA actions individually. Worley's argument in this regard is unsupported by citations
to any relevant law. Even if "court-approved settlements [generally] receive the same
res judicata effect as litigated judgments," Hoxworth v. Blinder, 74 F.3d 205, 208 (10th
Cir. 1996), the settlement agreement and final order of dismissal in Altier, as in all
Section 216(b) collective actions, "bind only the opt-in plaintiffs" who participated in the

settlement.  <u>Roussell</u>, 441 F. App'x at 225 (emphasis added).  None of the current <u>Akins</u> plaintiffs was in that group of Participating Plaintiffs in <u>Altier</u>.

The law is clear, as was stated in the court-approved notice that was sent to the conditionally certified group in <u>Altier</u>, <u>see</u> C.A. No. 11-241, Record Doc. No. 191, at p. 4, that "the opt-in provision of section [216] provides for no legal effect on those parties who choose not to participate."  <u>Yates</u>, 58 F. Supp. 2d at 1218; <u>accord</u> <u>Meseck v. TAK Commc'ns, Inc.</u>, No. 10-965, 2011 WL 1190579, at *8 (D. Minn. Mar. 28, 2011); <u>Espenscheid v. DirecStat USA, LLC</u>, No. 09-cv-625-bbc, 2010 WL 2330309, at *12 (W.D. Wis. June 7, 2010).  Neither claim nor issue preclusion applies to settlement agreements in FLSA actions to which plaintiffs in a later-filed action did not opt in. <u>Donatti v. Charter Commc'ns, L.L.C.</u>, No. 11-4166-CV-C-MJW, 2012 WL 5207585, at *4-5 (W.D. Mo. Oct. 22, 2012) (citing <u>Espenscheid v. DirecSat USA, LLC</u>, 688 F.3d 872, 877 (7th Cir. 2012)).

In the circumstances of the instant matter, I find that neither the plain language of Section 216(b) of the FLSA nor the case law precludes a second putative collective action.  Defendants' motion to dismiss the collective action claim is denied.

   D.   <u>Plaintiffs Adequately Allege a Cause of Action Against Mr. Worley</u>

Defendants argue that plaintiffs' claims against Mr. Worley must be dismissed because plaintiffs have failed to allege sufficiently in their complaint that he was their "employer" for purposes of the FLSA.  Under the statute, an "employer"

> "includes any person acting directly or indirectly in the interest of an
> employer in relation to an employee." 29 U.S.C. § 203(d).  The Fifth
> Circuit uses the "economic reality" test to evaluate whether there is an
> employer/employee relationship. . . .  To determine whether an individual
> or entity is an employer, the court considers whether the alleged employer:
> (1) possessed the power to hire and fire the employees, (2) supervised and
> controlled employee work schedules or conditions of employment,
> (3) determined the rate and method of payment, and (4) maintained
> employment records.  In cases where there may be more than one
> employer, this court must apply the economic realities test to each
> individual or entity alleged to be an employer and each must satisfy the
> four part test.

Gray v. Powers, 673 F.3d 352, 354-55 (5th Cir. 2012) (citing Goldberg v. Whitaker

House Coop., 366 U.S. 28, 33 (1961); Williams v. Henagan, 595 F.3d 610, 620 (5th Cir.

2010); Watson v. Graves, 909 F.2d 1549, 1553 (5th Cir. 1990)) (quotations omitted).

However, "each element need not be present in every case" to establish employer status.

Id. at 357.

Plaintiffs' amended complaint, Record Doc. No. 9, although conclusory in some

respects in describing Mr. Worley's status as an employer, sets forth the following

factual allegations.  Mr. Worley is the CEO, President, sole owner and sole officer of

both Worley Catastrophe Response, LLC and Worley Catastrophe Services, LLC.  He

controlled the companies' finances, negotiated contracts with their customers and leased

the facilities where their employees worked.  Mr. Worley was the only person with

authority to set and make changes to the compensation system that the companies used

for plaintiffs and other  similarly situated employees.  He changed the employees'

compensation by reclassifying a payment that had been made to them and previously

reported on IRS Form 1099 as wages properly reportable on Form W-2.  He negotiated a settlement with the IRS regarding the reporting of those payments and he issued a memo to employees informing them of the conversion of the payments.  In February 2011, Allen Carpenter and Charlie Bilbe (whose titles are not provided), who reported directly to Mr. Worley, changed plaintiffs' wages from $450 to $425 per day only because they had Mr. Worley's approval to do so.  Finally, plaintiffs alleged that Mr. Worley is the ultimate decision maker with respect to pay rates for classes of employees, such as the claims adjusters in the instant case.

These allegations raise a plausible claim that Mr. Worley was plaintiffs' employer, as defined by the economic reality test.  Plaintiffs have alleged that Mr. Worley is the sole owner and officer of both corporate entities.  The court can draw the obvious inference at this initial pleading stage that Mr Worley possesses the power to hire and fire employees.  For purposes of the pending motion, the other allegations of the complaint sufficiently address the second, third and fourth factors of the economic reality test.  The cases cited by defendants are distinguishable from the instant matter and are not persuasive.  See, e.g., Martin v. Spring Break '83 Prods., L.L.C., 688 F.3d 247, 251-53 (5th Cir.), cert. denied, 133 S. Ct. 795 (2012) (affirming summary judgment for individual defendants on basis that they were not employers because plaintiffs failed to rebut defendants' evidence that they did not satisfy the economic reality test); Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc., No. 11 Civ 6658, 2012 U.S. Dist. LEXIS

127824, at *37 (Sept. 6, 2012) (dismissing officers and directors of a multi-hospital system because complaint's allegations that these defendants had authority to make operational and employment decisions were "nothing more than conclusory allegations designed to satisfy the economic reality test" and "the complaint asserts little more than because [the individual defendants held positions as directors and officers], then each must have had authority to take the actions that comprise the 'economic realities' test, and that because each had the authority to take those actions, then each must have in fact taken those actions.") (quotations and citations omitted); Wolman v. Catholic Health Sys. of Long Island, Inc., 853 F. Supp. 2d 290, 299-300 (E.D.N.Y. 2012) (Plaintiffs who had worked at Good Samaritan Hospital brought putative collective action against it and several other hospitals, alleging that all hospitals were employers because the hospitals were operated as an integrated enterprise by defendant Catholic Health Systems, and also alleging that the CEO of Catholic Health Systems was their employer. The court dismissed all hospital defendants, except Good Samaritan, the one where plaintiffs had worked. The court also dismissed the CEO because Catholic Health Systems had been dismissed and because the complaint was devoid of facts that the CEO satisfied the economic reality test as to Good Samaritan.); Kaminski v. BWW Sugar Land Partners, No. H-10-551, 2010 WL 4817057, at *1, 2, 3 (S.D. Tex. Nov. 19, 2010) (dismissing complaint when "51 named defendants are collectively alleged to be 'in the business of operating restaurants in Texas and surrounding states,' and the 5 named plaintiffs are

each alleged to have been employed 'by Defendants' . . . ." "[A]ll allegations concerning violations of the FLSA are made globally against all defendants." Plaintiffs "offered [no] allegations that would permit the court to determine how they believe the multitude of named defendants could all qualify as employers under the FLSA." Plaintiffs could "amend their complaint to allege facts that support a plausible [claim] that each named defendant is a joint or multiple employer under the FLSA."); Cooke v. Jaspers, No. H-07-3921, 2010 WL 918342, at *6 (S.D. Tex. Mar 10, 2010) (dismissing one of two corporate defendants for insufficient pleading of "successor- or joint-employer liability," while granting leave to amend the complaint to cure the deficiency).

The well-pleaded facts in the amended complaint state a plausible claim that Mr. Worley was plaintiffs' employer. Plaintiffs need not detail in their complaint every fact on which they may eventually rely to prove their claim. Whether they will be able to produce sufficient evidence to prove that Mr. Worley was their employer is not at issue in the current motion to dismiss, but may be the subject of a motion for summary judgment or at trial, after discovery has occurred.

Accordingly, defendants' motion to dismiss plaintiffs' claim against Mr. Worley is denied.

New Orleans, Louisiana, this _____4th_____ day of February, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

24