UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN AKINS ET AL.                           CIVIL ACTION

VERSUS                                      NO. 12-2401

WORLEY CATASTROPHE                          MAGISTRATE JUDGE
RESPONSE, LLC ET AL.                        JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTIONS

This is a putative collective action for unpaid overtime pay and liquidated damages

brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., by John

Akins and other named plaintiffs on behalf of themselves and other similarly situated

claims adjusters against their former employers, Worley Catastrophe Response, LLC,

Worley Catastrophe Services, LLC (collectively "Worley") and Michael Allen Worley.

Non-parties Michael Sullivan, Charles Baldwin, Johnny Knighten, Jimmy Phillips and

Ron Dickerson (the "Sullivan Plaintiffs") filed two nearly identical motions to intervene:

(1) Motion for Leave to File Petition for Intervention, Record Doc. No. 48, and

(2) Motion to Intervene, Record Doc. No. 49.  The original plaintiffs in the instant action

filed a timely memorandum in opposition to both motions.  Record Doc. No. 60.  The

Sullivan Plaintiffs received leave to file a reply memorandum.  Record Doc. Nos. 67, 68,

69.

Plaintiffs filed Objections and Assertions of Privilege Over Evidence Submitted

in the Sullivan Plaintiffs' Motion for Leave to File Petition for Intervention and Motion

to Intervene and Request that Such Evidence, and Any Discussion Thereof, be Stricken From the Record and Clawed-Back.  Record Doc. No. 51.  The <u>Sullivan</u> Plaintiffs filed a timely opposition memorandum.  Record Doc. No. 55.  Plaintiffs received leave to file a reply memorandum in support of their motion.   Record Doc. Nos. 59, 61, 62. Defendants did not file a memorandum regarding any of the motions.

This matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties.  Record Doc. No. 26.

Having considered the complaint, the record, the submissions of the parties and the applicable law, and for the following reasons, IT IS ORDERED that the <u>Sullivan</u> Plaintiffs' motions to intervene are DENIED and that plaintiffs' motion to assert privilege and claw back a document is GRANTED IN PART AND DENIED IN PART, as follows.

## I.    <u>PROCEDURAL BACKGROUND</u>

The five <u>Sullivan</u> Plaintiffs are the named plaintiffs in a separate state court class action, <u>Michael Sullivan et al. v. Worley Companies et al.</u>, No. 599,055, Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana, which was filed against the same Worley entities that are defendants in the instant action.  In the state court action, the <u>Sullivan</u> Plaintiffs, individually and on behalf of a putative class of

approximately 1,200 claims adjusters, allege that Worley breached a written employment agreement with them and failed to pay them wages due under that contract. The <u>Sullivan</u> Plaintiffs seek to recover the unpaid difference in pay, plus statutory penalties and attorney's fees under Louisiana law. La. Rev. Stat. §§ 23:631, 23:632. In that case, the <u>Sullivan</u> Plaintiffs do not allege any violation of federal law.

The state trial court certified a class action, but granted Worley's motion for summary judgment and dismissed all claims before any court-approved notice was sent to class members. On December 21, 2012, the Louisiana First Circuit Court of Appeal affirmed the class certification. <u>Sullivan v. Worley Cos.</u>, No. 2012 CA 0095, 2012 WL 6677786 (La. App. 1st Cir. Dec. 21, 2012). On the same date in a separate opinion, the First Circuit found that genuine issues of material fact are in dispute regarding the interpretation of the contract or contracts between the parties. The state appellate court reversed the grant of summary judgment to Worley and remanded the case for further proceedings. <u>Sullivan v. Worley Cos.</u>, No. 2012 CA 1140, 2012 WL 6681799 (La. App. 1st Cir. Dec. 21, 2012). On February 6, 2013, the First Circuit denied Worley's application for rehearing of its reversal of the summary judgment. Plaintiffs' Exh. 1, Record Doc. No. 60-2. According to their reply memorandum, the <u>Sullivan</u> Plaintiffs filed a Motion to Approve and Disseminate Class Notice in the trial court about two weeks ago, on February 21, 2013. Record Doc. No. 69 at p. 2.

3

In February 2011, the same attorneys who represent the Akins plaintiffs previously filed in this court, on behalf of John J. Altier and others similarly situated, (1) a putative collective action under the FLSA, which alleged the same claims as are now asserted in Akins; and (2) a separate putative class action under Fed. R. Civ. P. 23, which alleged the same breaches of contract as are alleged in the Sullivan litigation.  The actions in this court were consolidated.  John J. Altier v. Worley Catastrophe Response, LLC et al., Civil Action No. 11-241, c/w Civil Action No. 11-242 (collectively "Altier").

This court conditionally certified a collective action under the FLSA in Civil Action No. 11-241, but denied class certification in the breach of contract action, Civil Action No. 11-242.  After a court-approved notice was sent to all collective action members and the opt-in period expired, the parties negotiated a settlement of the Altier plaintiffs' claims.  The settlement included a waiver and release not only of the plaintiffs' FLSA claims, but also of their contract-based claims against Worley, including specifically those claims raised on their behalf in the Sullivan putative class action.  All plaintiffs who had opted in to the FLSA action were given the opportunity either to consent to the settlement agreement or to decline to settle on the negotiated terms.

All but six (6) of the 544 opt-in plaintiffs in Altier consented to participate in the settlement.  This court approved the settlement agreement and dismissed the consolidated actions.  Order and Reasons, Record Doc. No. 312 in Altier, C.A. No. 11-241 c/w 11-

4

242.  In its final order of dismissal, the court dismissed with prejudice all claims of all plaintiffs who had participated in the settlement and dismissed the claims of those who had elected not to participate in the settlement "without prejudice to any rights they may have either to re-file such claims in the United States District Court for the Eastern District of Louisiana or to pursue their individual claims either in the existing cases or elsewhere."  Order on Motion, Record Doc. No. 316 in Altier, C.A. No. 11-241 c/w 11-242, entered on August 6, 2012.

Akins was filed about two months after Altier was dismissed.  The Akins plaintiffs seek to certify another collective action whose putative members are defined identically as the collective class in Altier, excepting those who had previously settled their claims in Altier.  Thus, the instant action includes as putative plaintiffs all former Worley claims adjusters during the relevant time period who were eligible to, but did not, opt in to Altier and its settlement agreement.  The plaintiffs in Akins do not assert any breach of contract claims.

All of the putative collective action members in Akins are also putative class members in Sullivan, as were all of the plaintiffs who opted in to Altier, until they settled with Worley and waived their breach of contract claims asserted in Altier and in Sullivan as a part of the settlement agreement.  As of the date when plaintiffs filed their

5

memorandum in opposition to the <u>Sullivan</u> Plaintiffs' motions to intervene, 233 plaintiffs had opted in to the instant action.

II.     <u>THE MOTIONS TO INTERVENE</u>

    A.     <u>The Magistrate Judge's Jurisdiction</u>

The <u>Sullivan</u> Plaintiffs previously filed a similar–though substantially less timely–motion to intervene in <u>Altier</u>.   In that case, I examined sua sponte the jurisdictional question whether I have the authority to rule definitively on the motion to intervene when all <u>parties</u> in this matter have consented in writing to its referral to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c), but the proposed intervenors have <u>not</u> so consented.  I found that I could exercise jurisdiction.  <u>Altier v. Worley Catastrophe Response, LLC</u>, No. 11-241, 2012 WL 161824, at *3-6 (E.D. La. Jan. 18, 2012).

In the instant case, the proposed intervenors again have not questioned my jurisdiction.  Plaintiffs state in their opposition memorandum that they have "researched (for any updates) the authorities" I cited in <u>Altier</u> in finding that I have jurisdiction, and that they "found no new authorities that undermine a Magistrate Judge's authority to rule on this non-dispositive pretrial motion."  Plaintiffs' memorandum in opposition, Record Doc. No. 60 at p. 1 n.4.

My own research confirms plaintiffs' statement.  Accordingly, based on the same analysis as in my similar order in <u>Altier</u>, I find that I have the authority to rule on the motions to intervene in <u>Akins</u>.

B.      <u>Legal Standards for Allowing Intervention</u>

As to intervention of right, Rule 24(a) states:

> On timely motion, the court must permit anyone to intervene who:  (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).  Thus, a party is entitled to an intervention of right if (1) the motion to intervene is timely; (2) the potential intervenor asserts a "direct, substantial [and] legally protectable" interest that is related to the property or transaction that forms the basis of the controversy in the case into which it seeks to intervene; (3) the disposition of that case may impair or impede the potential intervenor's ability to protect its interest; <u>and</u> (4) the existing parties do not adequately represent the potential intervenor's interest. <u>In re Lease Oil Antitrust Litig.</u>, 570 F.3d 244, 247, 250 (5th Cir. 2009) (quotation omitted); <u>Ross</u>, 426 F.3d at 753; <u>Heaton v. Monogram Credit Card Bank</u>, 297 F.3d 416, 422 (5th Cir. 2002); <u>Ford v. City of Huntsville</u>, 242 F.3d 235, 239 (5th Cir. 2001); <u>Edwards v. City of Houston</u>, 78 F.3d 983, 1000 (5th Cir. 1996); <u>Espy</u>, 18 F.3d at 1204-

05, 1207 (quoting Piambino v. Bailey, 610 F.3d 1306, 1321 (5th Cir. 1980)).  "In the

absence of any of these elements, intervention as of right must be denied."  Graham v.

Evangeline Parish Sch. Bd., 132 F. App'x 507, 511 (5th Cir. 2005) (citing United States

v. Franklin Parish Sch. Bd., 47 F.3d 755, 758 (5th Cir. 1995)).

As to permissive intervention, Fed. R. Civ. P. 24(b) provides in pertinent part:

(1)   In General.   On timely motion, the court may permit anyone to
intervene who:
> (A) is given a conditional right to intervene by a federal
> statute; or
> (B) has a claim or defense that shares with the main action a
> common question of law or fact.

*   *   *

(3) Delay or Prejudice.  In exercising its discretion, the court must consider
whether the intervention will unduly delay or prejudice the adjudication of
the original parties' rights.

Fed. R. Civ. P. 24(b)(1), (3) (emphasis added).  "Federal courts should allow intervention

where 'no one would be hurt and greater justice could be attained.'"  Ross v. Marshall,

426 F.3d 745, 753 (5th Cir. 2005) (quoting Sierra Club v. Espy, 18 F.3d 1202, 1205 (5th

Cir. 1994).

Both permissive interventions and interventions of right may be permitted only

"upon timely application," Fed. R. Civ. P. 24(a), because "the requirement of timeliness

applies whether intervention is sought as a matter of right or as a matter of discretion."

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and

8

Procedure § 1916 at 527-28 (3d ed. 2007).  The concept of "timeliness" in connection

with motions for leave to intervene is a flexible one, which is left to the sound discretion

of the trial court.  Id. at 529 (citing Grubbs v. Norris, 870 F.2d 343, 345 (6th Cir. 1989);

Holland v. Sterling Enters., Inc., 777 F.2d 1288, 1293 (7th Cir. 1985); McDonald v. E.J.

Lavino Co., 430 F.2d 1065, 1074 (5th Cir. 1970)); accord In re Lease Oil Antitrust Litig.,

570 F.3d at 248.  "'The requirement of timeliness is not a tool of retribution to punish the

tardy would-be intervenor, but rather a guard against prejudicing the original parties by

the failure to apply sooner.'"  Heaton v. Monogram Credit Card Bank, 297 F.3d 416, 422

(5th Cir. 2002) (quoting Espy, 18 F.3d at 1205).  "Th[is] analysis is contextual; absolute

measures of timeliness should be ignored."  Espy, 18 F.3d at 1205; accord Heaton, 297

F.3d at 422.  "A court should ignore 'how far the litigation has progressed when

intervention is sought[,] . . . the amount of time that may have elapsed since the

institution of the action . . . [, and] the likelihood that intervention may interfere with the

orderly judicial processes.'"  Am. V Ships Ltd. v. Norica Eng'g Servs., 34 F. App'x 151,

2002 WL 496377, at *3 (5th Cir. 2002) (quoting John Doe # 1 v. Glickman, 256 F.3d

371, 376 (5th Cir. 2001)).

　　　　"Recognizing these considerations, this court has fashioned a four-factor test for

determining whether a motion to intervene is timely."  Id.  Thus, when determining

whether a motion to intervene is timely, a court must consider  (1) how long the potential

intervenor knew or reasonably should have known of his stake in the case into which he seeks to intervene; (2) the prejudice, if any, the existing parties may suffer because the potential intervenor failed to intervene when he knew or reasonably should have known of his stake in that case; (3) the prejudice, if any, the potential intervenor may suffer if the court does not let him intervene; and (4) any unusual circumstances that weigh in favor of or against a finding of timeliness.  In re Lease Oil Antitrust Litig., 570 F.3d at 247-48 (citing Stallworth v. Monsanto Co., 558 F.2d 257, 263-66 (5th Cir. 1977)); Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc., 346 F.3d 552, 560-61 (5th Cir. 2003).  "These factors are not a formula for determining timeliness; instead, it should be determined based on all the circumstances."  Id. at 561 (quotation omitted).

C.    The Motions to Intervene Are Timely

I find that the motions to intervene are timely.  The instant action was filed on September 30, 2012.  The Sullivan Plaintiffs moved to intervene on January 29, 2013. They assert that they did not know until January 15, 2013 of an e-mail that the Altier plaintiffs' counsel had sent to their clients on February 20, 2012, on which the Sullivan Plaintiffs now base their arguments for intervention in Akins (and which is the subject of plaintiffs' pending motion to claw back that document).

The Akins plaintiffs respond that the Sullivan Plaintiffs' motions to intervene are untimely because counsel for the Sullivan Plaintiffs knew about this action when it was

filed.  Even if this is correct, the motions are timely.  The discovery deadline in this case is in October, the final pretrial conference is in November and the trial is set for December 9, 2013.  If the motions are granted, no party will be prejudiced by the <u>Sullivan</u> Plaintiffs' four-month filing delay, if it can even be called a delay.

> D.  The *Sullivan* Plaintiffs Fail to Meet the Other Three Criteria for <u>Intervention as of Right</u>

Consideration of the three remaining Rule 24(a)(2) factors weighs heavily in favor of denying the motion to intervene.  As explained below, the <u>Sullivan</u> Plaintiffs make only conclusory allegations that they satisfy these factors.  Their failure to meet any one factor means that their motions to intervene of right must be denied.  <u>Graham</u>, 132 F. App'x at 511.

Plaintiffs in the instant action allege that they were nonexempt employees of Worley who should have been paid overtime wages, as required by the FLSA.  The <u>Akins</u> plaintiffs do <u>not</u> assert that Worley breached any employment contract.  The <u>Sullivan</u> Plaintiffs fail to explain why, if they have an interest to protect in this putative collective action, they do not simply opt in, which they as putative members have a right to do at any time, rather than seeking to intervene.  However, they admit in their motion papers that they have no interest in the <u>claims</u> for unpaid overtime wages in the instant matter.

In the state court litigation, the <u>Sullivan</u> Plaintiffs contend that Worley employed them pursuant to a written contract, which Worley breached by paying them less than they should have been paid.  They seek to recover the difference in pay, plus statutory penalties and attorney's fees under Louisiana law.  The <u>Sullivan</u> Plaintiffs do <u>not</u> assert in that action that they were owed overtime pay.

According to the Louisiana First Circuit's opinions in <u>Sullivan</u>, Worley admits that all claims adjusters signed a written contract when they were hired.  However, Worley argues that it asked the adjusters to sign the contract for a different reason and that the written contract did not apply to the work on the Deepwater Horizon oil spill for which the <u>Sullivan</u> Plaintiffs were hired.  Worley contends that the adjusters worked pursuant to individual, oral contracts and that defendant paid them the agreed upon daily rate of pay under those contracts.  The First Circuit reversed the grant of summary judgment to Worley and remanded the case because of disputed material facts regarding the applicable contract and its terms.  <u>Sullivan</u>, 2012 WL 6681799, at *3-8.

The convoluted arguments of the proposed intervenors essentially boil down to their counsel's desire to give legal advice to members of the putative <u>Sullivan</u> class who opt in to the instant action that may differ from the advice that the intervenors speculate the <u>Akins</u> plaintiffs' attorneys will provide to the collective action members.  The <u>Sullivan</u> Plaintiffs assert that their interest in the instant case is to "ensur[e] that any

Sullivan class members who receive notice of the present collective action are able to make any decision whether or not to opt in to the collective action with full knowledge and understanding of what such an election might do [to] their rights to participate in the Sullivan class action." Memorandum in support of motion to intervene, Record Doc. No. 49-1 at p. 5 (emphasis added). The relief sought in the proposed Petition for Intervention is (1) "that the court should not exercise its discretion to send out notice to putative members of this action . . . and instead allow any similarly situated plaintiff to make his or her own election whether or not to proceed with an individual action"; (2) alternatively, if this court certifies a collective action and notice will be sent to the putative members, that the intervenors "be allowed to have input, arguments, and objections to any proposed collective action notice"; and (3) "to participate in all aspects of such proceeding, including discovery, motions, and trial." Petition for Intervention, Record Doc. No. 48-3, at ¶¶ III, IV, V (emphasis added).

These contentions do not constitute a direct, substantial and legally protectable interest that is related to the property or transaction that forms the basis of the controversy in this case. The mere fact that both sets of plaintiffs seek damages arising from their employment as claims adjusters by Worley is not enough to establish that the interests of the Sullivan Plaintiffs are related to the property or transaction that is the basis of the controversy in this case. The Sullivan Plaintiffs not only assert entirely

13

different theories of recovery in the state court action, which will require entirely different elements of proof from the <u>Akins</u> plaintiffs' burdens to show that they were nonexempt employees under the FLSA, but the <u>Sullivan</u> Plaintiffs do not even intend to assert any claims for damages or other affirmative relief against any party in this case.

This is a putative collective action under the FLSA.  If the <u>Sullivan</u> Plaintiffs are allowed to intervene, their interests will not be aligned with those of the <u>Akins</u> plaintiffs, who seek to certify a collective action.  The only relief that the proposed intervenors seek is to obstruct that goal for purposes <u>unrelated to the claims in this litigation</u>, solely to protect their litigation position and strategy as to their unrelated breach of contract claims and class certification in state court.

As the Louisiana First Circuit noted in its opinion affirming class certification, the written employment contract on which the <u>Sullivan</u> Plaintiffs rely includes a forum selection clause that limits the venue "of all disputes or other matters arising out of this agreement" to the 19th Judicial District Court of Louisiana.  "Worley notes that Louisiana law provides that such forum-selection clauses in employment agreements are null unless the employee expressly agrees to and ratifies the clause after the occurrence of the incident that is the subject of the suit." <u>Sullivan</u>, 2012 WL 6677786, at *4 (citing La. Rev. Stat.  § 23:921(A)(2)).

> While a forum-selection clause in an employment agreement may otherwise be null, the law provides that such a clause may be ratified by the employee, LSA–R.S. 23:921(A)(2), thus rendering the venue set forth therein a proper venue.  By their actions in filing this suit in the Nineteenth Judicial District Court, the named plaintiffs clearly ratified the forum selection clause.  Accordingly, East Baton Rouge Parish is clearly **a** parish of proper venue for this class action under LSA–C.C.P. art. 593.  As such, we question whether ratification of the forum-selection clause by the remaining putative class members is necessary for purposes of establishing that venue is proper.

Id. at *4 n.8 (underlined emphasis added) (bold emphasis in original).

The relevance to the instant motions to intervene of the parties' positions regarding the forum selection clause in Sullivan is expressed in an e-mail dated October 14, 2011 (during the pendency of Altier in this court and more than one year before the First Circuit ruled) from Jim Colvin, attorney for the Sullivan Plaintiffs, to Jay Hughes, attorney for the plaintiffs in Altier and, now, Akins.  Colvin states that, given the uncertainty surrounding the effect of the forum selection clause, as to which no court had yet ruled,

> we have expressed to our clients that we are very concerned that if they do enroll in the FLSA class action in which you are involved, it might be construed by the district court, or a later appellate court, as a repudiation of the forum selection/choice of law clause contained in their respective employment agreements, and thereby possibly precluded from being a member of our class action [in Sullivan].

Plaintiffs' Exh. 2, Record Doc. No. 60-3 at p. 2 (emphasis added).

15

In the instant motion, as evidence of their interest in intervening, the <u>Sullivan</u> Plaintiffs rely on a February 20, 2012 e-mail that was sent by the <u>Altier</u> plaintiffs' counsel Hughes and Joseph Fieschko, Jr. to their clients in that case.  This document was sent during the time period that all plaintiffs who had opted into the action were given to decide whether to participate in the settlement.   Among other things, the e-mail conveys the factual information that, "[o]n February 6, 2012, the Louisiana state court ruled that all of the claims in the <u>Sullivan v. Worley</u> case that arise out of the contract are <u>dismissed</u>, and that it is a final order."  Intervenors' Exh. 1, Record Doc. No. 49-3, at p. 1.  The e-mail then goes on to provide counsel's legal opinions and advice concerning the <u>Altier</u> case, including the effect, if any, of the <u>Sullivan</u> dismissal.

The <u>Sullivan</u> Plaintiffs contend that the e-mail was misleading because it did not advise its recipients that the dismissal could be appealed and would not be final until all appeal delays had expired.  They erroneously speculate that several members of the putative <u>Sullivan</u> class might have opted in to <u>Altier</u> after receiving the e-mail.  The deadline to opt in to <u>Altier</u> expired on October 21, 2011.  Only plaintiffs who had already opted in to the action received the e-mail from Hughes and Fieschko.

The <u>Sullivan</u> Plaintiffs also speculate that all plaintiffs in <u>Altier</u> who received the e-mail and decided to participate in the settlement, which included the release of all contract-based, putative <u>Sullivan</u> class claims, might have done so based on an erroneous

16

belief that the Sullivan matter was completely finished.  The Sullivan Plaintiffs state that,

following the First Circuit's decisions on appeal, their class action remains valid and

pending.  Thus, by intervening, they want to protect all members of the Sullivan putative

class from operating under the same, possibly erroneous belief that the Altier plaintiffs

might have held regarding the status of Sullivan.

As I previously found in Altier when the Sullivan Plaintiffs unsuccessfully sought

to intervene for purposes of giving legal advice to the opt-in plaintiffs concerning the

already negotiated settlement in that case, I again find in this case that the Sullivan

Plaintiffs lack a direct, substantial and legally protectable interest in representing a

Sullivan litigation class in this court, because the state court has not yet defined the scope

of the class and no notice of the state court class action has been formalized or sent to

putative class members.  Worley's petition for rehearing of the Louisiana First Circuit's

reversal of summary judgment in its favor was denied about three weeks ago.  Worley

has 30 days from the date the denial was mailed to file a writ application with the

Louisiana Supreme Court.  La. Code Civ. Proc. art. 2166; La. S. Ct. Rule X, § 5.  Until

that deadline expires, this court must assume that Worley's appeal is still pending.

Although the Sullivan Plaintiffs filed a Motion to Approve and Disseminate Class

Notice in the trial court on February 21, 2013, the putative state court class members

have not received notice of their rights, including the opportunity to exclude themselves

from the class, which is required both by Louisiana Code of Civil Procedure article

592(B) and to establish due process.  <u>Albach v. Kennedy</u>, 801 So. 2d 476, 480 (La. App.

1st Cir. 2001); <u>Ducote v. City of Alexandria</u>, 670 So.2d 1378, 95-1197 (La. App. 3d Cir.

1996).  Any interest the putative class members may have in a <u>Sullivan</u> class remains

contingent on the final decision on Worley's appeal of the First Circuit's reversal of the

summary judgment in its favor, a definition of the scope of the class, notice to class

members and expiration of the opt-out period.  Until these contingencies occur, the

named <u>Sullivan</u> Plaintiffs and their counsel do not represent any members of the putative

<u>Sullivan</u> class, except those who have expressly agreed to be represented by counsel, and

certainly do not represent those who have elected to proceed with their claims in this

court, where they are represented by their own counsel of record.  <u>See</u> <u>In re Katrina Canal</u>

<u>Breaches Consolidated. Litig.</u>, No. 05-4182, 2008 WL 4401970, at *3 (E.D. La. Sept. 22,

2008) (citing ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 07-445, at

3 (2007)) ("A client-lawyer relationship with a potential member of the class does not

begin until the class has been certified and the time for opting out by a potential member

of the class has expired. . . .  Therefore, putative class members are not represented

parties for purposes of the Model Rules prior to certification of the class and the

expiration of the opt-out period.").

In the absence of any direct, substantial and legally protectable interest related to the property or transaction that forms the basis of the Akins controversy, the Sullivan Plaintiffs have no right to intervene under Fed. R. Civ. P. 24(a).  In the absence of such an interest, the disposition of this case cannot possibly impair or impede their ability to protect the interest.  All members of the Sullivan putative class (other than the Altier plaintiffs who already settled all of their claims against Worley) will receive notice and have an opportunity to opt in to the instant action if a collective action class is conditionally certified, so that they will be able to protect any interest that they actually have in the claims in this action.  Those who do not opt in and are putative members of the Sullivan class can still pursue their claims in the state court litigation, which is the only interest they have.

Finally, the Sullivan Plaintiffs have produced nothing but speculation that there is a risk that plaintiffs in this action will not be well represented regarding the contents of the collective action notice, if any collective action is certified in this case.  On the contrary, plaintiffs in this matter are represented by able counsel who have already proven themselves to me, in both Altier and this action, as highly competent, professionally responsible and fully capable of advising plaintiffs.  There is no evidence that counsel of record for plaintiffs in this court will not adequately represent the interests that the Sullivan Plaintiffs attempt to assert.

Although counsel for the <u>Sullivan</u> Plaintiffs might wish to advise plaintiffs in this action differently regarding whether to opt in or regarding the language of the collective action notice, if one is sent, mere "tactical differences do not make inadequate the representation of those whose interests are identical."  <u>Bush</u>, 740 F.2d at 358 (citing <u>Bumgarner v. Ute Indian Tribe</u>, 417 F.2d 1305, 1308 (10th Cir. 1969); <u>Acuff v. United Papermakers</u>, 404 F.2d 169 (5th Cir. 1968)).  "[A] showing of more than a mere disagreement on litigation strategy is necessary."  <u>New York v. Gutierrez</u>, No. 08-CV-2503, 2008 WL 5000493, at *7 (E.D.N.Y. Nov. 20, 2008) (citing <u>Chiglo v. City of Preston</u>, 104 F.3d 185, 188 (8th Cir. 1997); <u>United States v. Hooker Chems. & Plastics Corp.</u>, 749 F.2d 968, 985 (2d Cir. 1984)).

> Representation is not inadequate simply because "the applicant would insist on more elaborate [pretrial or] pre-settlement procedures or press for more drastic relief, or where the applicant and the existing party have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy."  Generally, [the proposed intervenor] would need to demonstrate that it has a legal interest that not only differs from the [the existing plaintiffs'] interest, but would permit [the proposed intervenor] to assert a justification . . . that could not be equally asserted by the [existing plaintiffs].

<u>Schwartz v. Town of Huntington</u>, 191 F.R.D. 357, 359 (E.D.N.Y. 2000) (quoting <u>United States v. City of N.Y.</u>, 198 F.3d 360, 367 (2d Cir. 1999)) (citing <u>Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.</u>, 922 F.2d 92, 97 (2d Cir. 1990)) (additional citations omitted).

"When the party seeking to intervene has the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance." Franklin Parish Sch. Bd., 47 F.3d at 757 (quotation omitted).  No such negative interests have been established here.

Because the Sullivan Plaintiffs have failed to establish the criteria of Rule 24(a), their motions to intervene must be denied.

> E.   The *Sullivan* Plaintiffs Fail to Identify a Common Question of Law or Fact That Would Warrant Permissive Intervention

Permissive intervention pursuant to Fed. R. Civ. P. 24(b) "is appropriate where 'an applicant's claim or defense and the main action have a question of law or fact in common.'" Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp., 332 F.3d 815, 824 (5th Cir. 2003) (quoting Fed. R. Civ. P. 24(b)(2)).  However, permissive intervention "is a matter wholly discretionary with the [district] court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." Staley v. Harris County, 160 F. App'x 410, 414 (5th Cir. 2005) (quotation omitted) (brackets and ellipsis by the Fifth Circuit).  Thus, "a district court may deny permissive intervention if such would unduly delay or prejudice the

adjudication of the rights of the original parties."   Graham, 132 F. App'x at 514 (quotation omitted).

For the same reasons discussed above, the Sullivan Plaintiffs make only conclusory allegations of a common question of law or fact.  There are no common questions of law between their state-court claims for breach of contract and statutory penalties under Louisiana law and the Akins plaintiffs' claims for overtime wages and liquidated damages under the FLSA.  The Sullivan Plaintiffs assert that a determination of the job duties and responsibilities of each putative member of the collective action is a common question of fact with the class action.  In their reply memorandum, the Sullivan Plaintiffs explain that a determination in this case that collective action members were exempt, administrative employees for FLSA purposes "may negatively impact" their breach of contract claim in Sullivan because "the employment agreement applies only to adjusters" and  "would arguably mean that the employment contract could not apply."   Reply memorandum, Record Doc. No. 69 at pp. 3-4.  This conclusory, speculative argument fails to establish a common question of fact.

The only fact in common between the two actions is that the members of the putative Sullivan class and the putative Akins collective action are identical because they worked for Worley during the aftermath of the Deepwater Horizon oil spill.  Even if the determination of the plaintiffs' job duties is a fact common to both actions, it is

insufficient to justify permissive intervention.  For the same reasons discussed above in

finding that the Sullivan Plaintiffs cannot intervene as of right, I find that allowing the

Sullivan Plaintiffs to intervene would unduly delay or prejudice the adjudication of the

rights of the original parties.  Accordingly, IT IS ORDERED that the motions to

intervene are DENIED.

III.   PLAINTIFFS' MOTION REGARDING PRIVILEGED DOCUMENT

Plaintiffs assert an attorney-client privilege over the February 20, 2012 e-mail that

the Sullivan Plaintiffs submitted as an exhibit to their motion to intervene, Intervenors'

Exh. 1, Record Doc. No. 49-3, and from which the Sullivan Plaintiffs quoted in their

memoranda regarding those motions and in their opposition to plaintiffs' clawback

motion.  Plaintiffs ask the court to strike this evidence and any discussion of it from the

record and to order that the document be "clawed back" from the Sullivan Plaintiffs.

The federal common law of privilege applies in this case brought under the court's

federal question jurisdiction.  Willy v. Admin. Review Bd., 423 F.3d 483, 495 (5th Cir.

2005).  I find that federal common law and Louisiana statutory law are materially similar

concerning the attorney-client privilege. See Hodges, Grant & Kaufman v. United States,

768 F.2d 719, 720-21 (5th Cir. 1985) ("attorney-client privilege protects communications

made in confidence by a  client to his lawyer for the purpose of obtaining legal advice.

The privilege also protects communications from the lawyer to his client, at least if they

would tend to disclose the client's confidential communications.") (citations omitted);

Soriano v. Treasure Chest Casino, Inc., No. 95-3945, 1996 WL 736962, at *2 (E.D. La.

Dec. 23, 1996) (federal common law and Louisiana law of privilege are substantially

similar).

> Louisiana Code of Evidence article 506 provides in relevant part that

> [a] client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, . . . when the communication is:
> (1)  Between the client or a representative of the client and the client's lawyer or a representative of the lawyer.

La. Code Evid. art. 506(B).

A communication is "'confidential' if it is not intended to be disclosed to persons

other than: (a) Those to whom disclosure is made in furtherance of obtaining or rendering

professional legal services for the client."  Id. art. 506(A)(5).  It is axiomatic that the

attorney-client privilege "only protects disclosure of confidential communications

between the client and attorney; it does not protect disclosure of underlying facts."

United States v. Edwards, 39 F. Supp. 2d 716, 723 (M.D. La. 1999) (citing Upjohn Co.

v. United States, 449 U.S. 383, 395-96 (1981); In re Six Grand Jury Witnesses, 979 F.2d

939 (2d Cir. 1992); United States v. Freeman, 619 F.2d 1112 (5th Cir. 1980); Computer

Network Corp. v. Spohler, 95 F.R.D. 500 (D.D.C. 1982)).

24

The burden of substantiating a claim of attorney-client privilege falls upon the party asserting the privilege.  Exxon Corp. v. St. Paul Fire & Marine Ins., 903 F. Supp. 1007, 1008 (E.D. La. 1995); High Tech Comm'c'ns, Inc.  v.  Panasonic Co., No. 94-1477, 1995 WL 45847, at *1 (E.D. La. Feb. 2, 1995) (citing Hodges, 768 F.2d at 721) (additional citations omitted).  "Although the privilege belongs to the client, and only the client may waive it, an attorney may assert the privilege on the client's behalf."  Haines v. Liggett Grp., 975 F.2d 81, 90 (3d Cir. 1992) (citing McCormick on Evidence § 92 (4th ed. 1992)); accord United States v. Juarez, 573 F.2d 267, 276 (5th Cir. 1978) (citing Fisher v. United States, 425 U.S. 391, 402 n.8 (1976)).

Once a claim of privilege has been established, the burden of proof shifts to the party seeking the privileged communication to prove any applicable exception to the privilege, such as waiver.  Perkins v. Gregg County, 891 F. Supp. 361, 363  (E.D. Tex. 1997); Texaco, Inc. v. La. Land & Expl., Inc., 805 F. Supp. 385, 387 (M.D. La. 1992).

Plaintiffs' motion, supported by evidence in affidavit form and unrebutted by any evidence in opposition, is sufficient to establish the asserted privilege.  The Sullivan Plaintiffs argue that the e-mail contains purely factual information regarding the status of the Sullivan litigation.  However, they fail to acknowledge that the factual information they cite is contained in only two sentences of a ten-paragraph document.  I find that the overall communication is privileged on its face.  Not only is the e-mail marked

25

"Confidential and Privileged/Settlement Update" and "Not for Dissemination or Disclosure" in bold type and capital letters, it was sent only to the attorneys' existing clients. It clearly contains legal advice from the <u>Altier</u> attorneys to their clients regarding the status of that litigation and the attorneys' recommendations concerning settlement. The presence of some factual information, which is not itself privileged, does not strip the remainder of the document of its privileged character.

The question then is whether the privilege was waived as to all of the <u>Altier</u> plaintiffs when one (or more) of them gave the confidential e-mail to the <u>Sullivan</u> Plaintiffs. The <u>Sullivan</u> Plaintiffs bear the burden of proof to establish waiver.

"Patently, a voluntary disclosure of information which is inconsistent with the confidential nature of the attorney[-]client relationship waives the privilege." <u>Alldread v. City of Grenada</u>, 988 F.2d 1425, 1434 (5th Cir. 1993).

> The privilege is waived by the attendance of a third person to the communication or by the sharing of the communication with a third person, if that person does not share a common legal interest with respect to the subject matter of the communication. In some circumstances, the existence of a matter of common interest must be presumed in the pre-representation phase when several persons seek consultation with an attorney; and in that situation no one of the jointly interviewed clients can waive the privilege as to all participants.

Herwig v. Marine Shale Processors, Inc., No. 92-2753, 1993 WL 70223, *1 (E.D. La. Mar. 9, 1993); accord In re Auclair, 961 F.2d 65, 69 (5th Cir. 1992) (citing Hodges, Grant & Kaufman, 768 F.2d at 721; McCormick on Evidence § 91 at 219 ( 3d ed. 1984)).

The Fifth Circuit held in Auclair that one prospective client cannot waive the attorney-client privilege on behalf of another prospective client as to confidential communications that were made to the attorney while the two were seeking joint representation. My research has located no case in which the Fifth Circuit has ruled on that question when existing clients are involved, but the Third Circuit has held that

> waiving the joint-client privilege requires the consent of all joint clients. A wrinkle here is that a client may unilaterally waive the privilege as to its own communications with a joint attorney, so long as those communications concern only the waiving client; it may not, however, unilaterally waive the privilege as to any of the other joint clients' communications or as to any of its communications that relate to other joint clients.

In re Teleglobe Comm'c'ns Corp., 493 F.3d 345, 363 (3d Cir. 2007) (citing Restatement (Third) of the Law Governing Lawyers § 75(2)) (footnote omitted) (emphasis added). District courts considering the issue have reached the same conclusion. Magnetar Techs. Corp. v. Six Flags Theme Park Inc., No. 07-127-LPS-MPT, 2012 WL 3609715, at *6 (D. Del. Aug. 22, 2012); In re CFS-Related Sec. Fraud Litig., 223 F.R.D. 631, 634 (N.D. Okla. 2004) (citing Interfaith Housing Del., Inc. v. Town of Georgetown, 841 F. Supp. 1393, 1402 (D. Del. 1994); W. Fuels Ass'n Inc. v. Burlington N. R.R., 102 F.R.D. 201,

203 (D. Wyo. 1984); 2 David W. Louisell & Christopher B. Mueller, <u>Federal Evidence</u> § 210, at 787-88 (1985); Scott N. Stone & Ronald S. Liebman, <u>Testimonial Privileges</u> § 1.55 Joint Defense, at 95 (1983)).  The <u>Sullivan</u> Plaintiffs have cited no decisions to the contrary.

Accordingly, plaintiffs' motion is GRANTED IN PART pursuant to Fed. R. Evid. 502; Fed. R. Civ. P. 26(b)(5)(B); and the parties' Stipulated FRCP 26(c) Protective Order and FRE 502(d) and (e) Clawback Agreement/Order, Record Doc. No. 31, in that the CLERK OF COURT IS HEREBY DIRECTED to place Record Doc. Nos. 48, 49, 49-1, 49-3 (Intervenors' Exhibit 1) and 55 under seal.  The motion is DENIED insofar as it seeks to strike the motions to intervene, which I have ruled on above.

IT IS FURTHER ORDERED that counsel for the <u>Sullivan</u> Plaintiffs must immediately return the subject privileged e-mail and all copies to plaintiffs' counsel and must cease immediately any further dissemination of its content.

New Orleans, Louisiana, this _____4th_____ day of March, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE