## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JOHN AKINS, ET AL.,** | ) | **Civil Action No. 2:12-cv-2401** |
| **Individually and on behalf of all others** | ) | **CJB-SS** |
| **similarly situated and identified below,** | ) | |
| | ) | **CLASS/COLLECTIVE ACTION** |
| **Plaintiffs,** | ) | |
| | ) | **SECTION: J(2)** |
| **v.** | ) | |
| | ) | **MAGISTRATE JUDGE** |
| **WORLEY CATASTROPHE** | ) | **JOSEPH C. WILKINSON, JR.** |
| **RESPONSE, LLC,** | ) | |
| **WORLEY CATASTROPHE** | ) | |
| **SERVICES, LLC, and** | ) | |
| **MICHAEL ALLEN WORLEY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
## <u>PROTECTIVE ORDER (REPRESENTATIVE/NARROWED DISCOVERY)</u>

## TABLE OF CONTENTS

COVER PAGE.................................................................................................................i

TABLE OF CONTENTS..............................................................................................ii

TABLE OF AUTHORITIES ......................................................................................iv

I.      RULE 26 AUTHORIZES THE COURT TO CONTROL DISCOVERY ...............2

II.     DEFENDANTS' DISCOVERY IS FUTILE IN THIS CONTEXT........................3

        A.      Broad Biographical-Type Discovery From Every Plaintiff Is
                Needless ....................................................................................................4

        B.      Discovery On Damages Is Unnecessary Because Plaintiffs Do Not
                Allege An Off-The-Clock Claim ..............................................................5

        C.      Defendants' Discovery On Willfulness ........................................................5

III.    DISCOVERY IS COMPLETE ON THE DAY RATE WORLEY PAID...............6

        A.      Defendants Have Admitted Their Day Rate Payments To Plaintiffs ...........6

        B.      The "Needs Of The Case" Do Not Justify Discovery On Liability...............7

        C.      The Costs Of Discovery On Liability Far Outweigh The Benefits ...............8

        D.      Defendants Have All The Sources To Prove Their Own Comp
                Practices ....................................................................................................8

        E.      Plain Day Rate Payments Require Overtime.................................................8

IV.     NO FURTHER DISCOVERY ON DAMAGES IS NEEDED ...............................9

V.      ANY DISCOVERY SHOULD BE LIMITED TO REPRESENTATIVE
        SAMPLES................................................................................................................10

        A.      Defendants' Written Discovery Is Unduly Burdensome And Against
                The Remedial Purposes Of The FLSA .......................................................10

B.      Individualized Discovery Is Rare In FLSA Collective Actions .................11

C.      Many Courts Have Favored Representative Discovery .............................12

D.      The Parties Should Confer Concerning Representative Discovery.............14

VI.     REPRESENTATIVE DISCOVERY IS PROPER ON WILFULNESS.................14

A.      Good Faith Is A Class Wide Issue Meriting Representative
        Discovery ...................................................................................................14

B.      Willfulness Is A Class Wide Issue Meriting Representative
        Discovery ...................................................................................................15

C.      Courts Have Routinely Decided These Issues On A Class-Wide
        Basis ..........................................................................................................15

VII.    DEFENDANTS' IRRELEVANT REQUESTS.....................................................16

VIII.   CONCLUSION ....................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>:

*Adkins v. Mid-America Growers*,
    141 F.R.D. 466 (N.D. Ill. 1992)........................................................................12, 14

*Amir Athletic, LLC v. State Farm Fire & Cas. Comp.*,
    2012 WL 520658 (E.D. La. Feb. 16, 2012) ........................................................16

*Barrus v. Dick's Sporting Goods, Inc.*,
    465 F. Supp. 2d 224 (W.D.N.Y. 2006) ...............................................................12

*Belcher v. Shoney's Inc.*,
    30 F. Supp. 2d 1010 (M.D. Tenn. 1998) .............................................................12

*Bradford v. Bed Bath & Beyond*,
    184 F. Supp. 2d 1342 (N.D. Ga. 2002) ...............................................................12

*Brock v. Claridge Hotel & Casino*,
    846 F.2d 180 (3rd Cir.), *cert. denied*, 488 U.S. 925 (1988) ....................................9

*Casas v. Conseco Fin. Corp.*,
    2002 WL 246753 (D. Minn. Feb. 15, 2002) .......................................................13

*Cranney v. Carriage Servs., Inc.*,
    2008 WL 2457912 (D. Nev. June 16, 2008) ..................................................13, 14

*Cunningham, v. Faerber's Bee Window, Inc.*,
    2005 WL 1123534 (S.D. Ind. Apr. 19, 2005) ........................................................9

*Dole v. Petroleum Treaters, Inc.*,
    876 F.2d 518 (5th Cir. 1989) ..................................................................................9

*Falcon v. Starbucks Corp.*,
    580 F. Supp. 2d 528 (S.D. Tex. 2008) ...........................................................13, 14

*Fast v. Applebee's Internat'l, Inc.*,
    2008 WL 5432288 (W.D. Mo. Dec. 31, 2008) ...................................................13

*Geer v. Challenge Fin. Investors Corp.*,
    2007 WL 1341774 (D. Kan. May 4, 2007) ....................................................13, 14

*Guidry v. United States,*
    2004 WL 2984808 (E.D. La. Dec. 22, 2004) ........................................................16

*Lee v. Vance Executive Prot., Inc.*,
    7 Fed. Appx. 160 (4th Cir. 2001) .........................................................................6

*Lusardi v. Xerox Corp.*,
    118 F.R.D. 351 (D.N.J. 1987) ..............................................................................12

*McGrath v. City of Phil.*,
    1994 WL 45162 (E.D. Pa. Feb. 10, 1994) .......................................................12, 13

*Mooney v. Aramco Servs., Inc.*,
    54 F.3d 1207 (5th Cir. 1995) ...............................................................................11

*Mumby v. Pure Energy Svcs., Inc.*,
    636 F.3d 1266 (10th Cir. 2011) .....................................................................4, 6, 15

*Prentice v. Fund for Pub. Interest Research, Inc.*,
    2007 WL 2729187 (N.D. Cal. Sept. 18, 2007) ....................................................12

*Reich v. Circle C. Inv., Inc.*,
    998 F.2d 324 (5th Cir. 1993) ...............................................................................13

*Singer v. City of Waco,*
    324 F.3d 813 (5th Cir. 2003) ......................................................................3, 6, 14, 15

*Smith v. Lowes Home Ctrs.*,
    236 F.R.D. 354 (S.D. Ohio 2006) ...................................................................12, 14

*Thibualt v. BellSouth Telecomm., Inc.*,
    2008 WL 4808893 (E.D. La. Oct. 30, 2008) .....................................................2, 16

## Statutes and Regulations:

FED. R. CIV. P. 26(a)(1)(A)(i) ............................................................................4

FED. R. CIV. P. 26(b) ........................................................................................................16

FED. R. CIV. P. 26(b)(1) ...................................................................................................16

FED. R. CIV. P. 26(b)(2)(C) ...................................................................................1, 2, 3, 8

29 U.S.C. § 211(c) ..............................................................................................................5

29 U.S.C. § 255..................................................................................................................15

29 U.S.C. § 260..................................................................................................................14

29 C.F.R. § 541.602 ............................................................................................................9

29 C.F.R. § 541.604 ............................................................................................................9

29 C.F.R. § 778.112 ............................................................................................................8

App. B, 69 Fed. Reg. at 22183 (Apr. 23, 2004) .................................................................9

In light of the Court's conditional certification of the *Akins* class and Plaintiffs' pending Motion for Partial Summary Judgment (Not Paid on a "Salaried Basis") ("MPSJ"),[1] Plaintiffs seek protection from Defendants' **235 sets** of discovery containing **a total of 3,055 Interrogatories and 5,170 Requests for Production**.  Plaintiffs seek protection because the discovery is duplicative and irrelevant, can be obtained from other sources, and the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case… and the importance of the discovery in resolving the issues" under Federal Rule of Civil Procedure 26(b)(2)(C).

The parties fully briefed the issue of Plaintiffs' pending MPSJ previously in *Altier* (before reaching a settlement), and this case can, and should, be substantially resolved at the summary judgment phase because Defendants have admitted they compensated Plaintiffs based on a day rate rather than on a salary basis.  If Plaintiffs prevail on their MPSJ, their timesheets will allow the parties, the Court, or a Special Master to efficiently determine each Plaintiff's damages by simple mathematical computations.

Thus, in the event of a partial summary judgment, the only issues that will remain concern <u>Defendants'</u> state of mind.  More particularly, the Court will need to determine whether Worley had a good faith belief its practices were legal for purposes of liquidated damages[2] and whether its conduct was willful to determine the proper statute of limitations.  These are class-wide issues that do not necessitate individualized discovery from every class member.  Instead, representative discovery from certain class members

---

[1] Rec. Doc. 82 (MPSJ) & 86 (extending submission date to May 8, 2013).

[2] In *Altier*, Plaintiffs filed a Motion for Partial Summary Judgment (Defendants' "Good Faith Defense" to Liquidated Damages).  (*Altier*, Rec. Doc. 257).  Plaintiffs intend to file a similar motion in this action.

will be sufficient to adjudicate these issues.  Indeed, even if Plaintiffs do not secure summary judgment on the salaried-basis issue, representative discovery is appropriate for most issues covered in Defendants' 235 sets of Interrogatories and Requests for Production.

## I.   RULE 26 AUTHORIZES THE COURT TO CONTROL DISCOVERY.

Rule 26(b)(2) authorizes the court to guard against "redundant or disproportionate discovery by giving the Court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Thibualt v. BellSouth Telecomm., Inc.*, 2008 WL 4808893 at *3-4 (E.D. La. Oct. 30, 2008) (Wilkinson, Mag. J.) (citing Official Advisory Committee Notes to the 1983 & 1993 Amendments to Rule 26, *quoted in Federal Civil Judicial Procedure & Rules*, 143, 148 (West Pamph. 2006)). Specifically, Rule 26(b)(2)(C) states that a court:

> "**must** limit the frequency or extent of discovery otherwise allowed by these rules… if it determines that:
>
> (i)   the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome or less expensive;…or
>
> (iii)   the burden or expense of the proposed discovery outweighs its likely benefits, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues."

FED. R. CIV. P. 26(b)(2)(C) (emphasis added).

Plaintiffs respectfully submit that (a) the "needs of the case" do not necessitate further discovery on most issues; (b) to the extent that issues of damages and Defendants' state of mind cannot be resolved through summary judgment, the discovery sought

originated from Defendants and can be obtained through Defendants' own records (i.e. from "some other source" that is "less burdensome"); (c) the burden and expense of Plaintiffs answering thousands of Requests for Production and Interrogatories far outweigh any "likely benefit" to Defendants; and (d) to the extent any of Defendants' requests have any probative value they are "unreasonably cumulative or duplicative" and should be answered through representative discovery (as discussed in detail in Section V below).    FED. R. CIV. P. 26(b)(2)(C).

## II.    DEFENDANTS' DISCOVERY IS FUTILE IN THIS CONTEXT.

In this context where liability can be determined on summary judgment and damages can be determined by reference to timesheets, the vast majority of Defendants' discovery serves no purpose other than to harass the class members for their participation in the *Akins* case.  Defendants' discovery can be divided into three categories:

> (a)  broad brush, biographical-type discovery asking for information and every document potentially related to Plaintiffs' employment histories, criminal records, litigation histories, and their knowledge of prior overtime settlements involving Defendants;

> (b)  discovery regarding Plaintiffs' damages; and

> (c)  discovery regarding whether Defendants' conduct was willful.

**All these issues, with the exception of willfulness, are irrelevant to this action or can be disposed of by a ruling on the MPSJ and review of Plaintiffs' timesheets.**[3] Furthermore, the willfulness issue can be decided on a class-wide basis through representative testimony.  *Singer v. City of Waco*, 324 F.3d 813, 821-23 (5th Cir. 2003)

---

[3] Plaintiffs are not seeking any off-the-clock hours not recorded on their timesheets for damages purposes, but may rely on evidence of uncounted off-the-clock time to prove willfulness.

(holding defendant willfully violated the FLSA with respect to its compensation practices for firefighters and awarding liquidated damages); *Mumby v. Pure Energy Svcs., Inc.*, 636 F.3d 1266, 1268-72 (10th Cir. 2011) (holding defendant willfully violated the FLSA by maintaining a day rate compensation system for all its field employees);.

A.      **Broad Biographical-Type Discovery From Every Plaintiff Is Needless.**

In their Interrogatories ("ROG's"), Defendants ask 235 individual Plaintiffs to identify witnesses , even though this information was already provided with Plaintiffs' Initial Disclosures.  (Ex. 1,[4] ROG Nos. 1, 4, 7; FED. R. CIV. P. 26(a)(1)(A)(i).)

Defendants seek to harass and invade the privacy of every class member (as well as third parties), and unduly burden Plaintiffs' counsel, by inquiring about (a) the lifetime criminal records of each class member, (b) their lifetime lawsuit histories (which would include such clearly irrelevant proceedings as, for example, divorces, child support and custody-related disputes, auto accidents, and inheritance related litigation), and (c) their employment histories for the past 15 years.   (Ex. 1, ROG Nos. 9-11.)   These biographical-type requests are irrelevant, unduly burdensome and oppressive, and implicate privacy concerns.

---

[4] All Named Plaintiffs' and Subsequent Opt-In's Objections, Assertions of Privilege and Responses to Defendants' First Sets of Interrogatories and Requests for Production of Documents are submitted as Exhibit 3.

Defendants also seek to intimidate class members through wholly irrelevant Interrogatories regarding whether class members saw or heard about prior settlement agreements in *Altier*.  (Ex. 1, ROG Nos. 12-13.)[5]

Defendants also seek all documents and statements that each of the 235 Plaintiffs could potentially rely on, even though most of those documents such as paystubs, contracts, timesheets, and policies were generated by Defendants and should have been retained by them in the ordinary course of business (as 29 U.S.C. § 211(c) requires employers to retain these records for three years).  (Ex. 1, RFP Nos. 1, 3, 6, 8-9, 11, 15-18.)

**B.    Discovery On Damages Is Unnecessary Because Plaintiffs Do Not Allege An Off-The-Clock Claim.**

Defendants also propound Interrogatories and Requests for Production asking each class member to identify their individual damages and produce documentary proof of any hours they allege they worked.  (Ex. 1, ROG Nos. 3, 5, RFP Nos. 4-5.)  Because Plaintiffs have not alleged an off-the-clock claim for damages, their authenticated timesheets produced by Defendants are the best evidence on the issue of damages.  To the extent any off-the-clock allegations are probative to the issue of willfulness, Plaintiffs can produce records on a representative basis.

**C.    Defendants' Discovery On Willfulness.**

With regard to willfulness, Defendants seek production regarding all evidence that supports Plaintiffs' allegations of willfulness, specifically including any statements

---

[5] ROG Nos. 9-13, if not wholly irrelevant, at best relate to the general subject matter of the lawsuit rather than any particular claim or defense in the case.  As a result, they are not proper discovery unless good cause is shown by Defendants for their discovery.  *See Infra* Section VII.

Plaintiffs have regarding the number of hours they should have recorded on timesheets, any documents related to off-the-clock work, and any documents related to pre-litigation demands for overtime compensation.   (Ex. 1, RFP Nos. 10, 12-14, ROG No. 8.) Willfulness is an issue of <u>Defendants' state of mind</u>, which can determined by <u>Defendants'</u> testimony and documents (not Plaintiffs' testimony).   *Singer*, 324 F.3d at 821-23 (holding willfulness is an issue of defendant's state of mind).

## III.   DISCOVERY IS COMPLETE ON THE DAY RATE WORLEY PAID.

### A.   <u>Defendants Have Admitted Their Day Rate Payments To Plaintiffs</u>.

Plaintiffs have taken depositions from several key officers of Defendants involved in the BP Project (other than Mike Worley, Allen Carpenter and Ray Jeanfrou).[6]   The facts regarding Defendants' day rate payments are undisputed by all Worley witnesses.[7] (Rec. Doc. 82-5, Harvey Depo., 105:3-18; Rec. Doc. 82-6, Landrum Depo., 92:10-94:1; Rec. Doc. 82-7, Simon Depo., 7:20-9:5; 10:7-20 & 11:14-12:12; Rec. Doc. 82-8, Bilbe Depo., 9:19-21, 30:14-34:15, 70:14-17.)   Furthermore, two circuit courts have weighed in on the issue of payment of a day rate and determined that overtime compensation is necessary when a day rate is paid.   *Lee v. Vance Executive Prot., Inc.*, 7 Fed. Appx. 160, 165 (4th Cir. 2001) (granting summary judgment for plaintiffs because they were paid a day rate); *see also Mumby*, 636 F.3d at 1268-72 (holding defendant willfully violated the FLSA by maintaining a day rate compensation system for all its field employees).

---

[6] Plaintiffs incorporate their Motion for Partial Summary Judgment (Not Paid on a "Salaried Basis") and supporting evidence (Rec. Doc. 82) by reference into this Motion.

[7] Even in response to Plaintiffs' Motion for Conditional Certification, Defendant could not argue that how Plaintiffs were paid varied.   (Rec. Doc. 77.)   They could argue only that Plaintiffs received calls from different recruiters before joining Defendants as employees.   *Id.*

Worley has also admitted in writing on multiple occasions its payment of a day rate.  Worley has admitted in its Interrogatory Responses in both this and the earlier *Altier* case that "[t]he [evaluator] rates of pay were either $425, $450, or $550 **per day**." (Rec. Doc. 82-11, *Altier* Case, Worley Response to ROG No. 1 & *Akins* Case, Worley Response to ROG No. 3 (emphasis added).)   Worley has also admitted in its MPSJ Response in *Altier* that "[t]he adjusters [evaluators] were paid a **day rate** of either $450 or $550 per day on the BP Project until February 1, 2011."  (*Altier* Rec. Doc., 266, p. 9 (emphasis added).)   Finally, in February 2011, Worley had each evaluator it still employed on the BP Project sign a short Addendum to their Employee Agreement stating that "[e]mployee agrees to be compensated at the **day rate** in the amount of $425.00 per day."  (Rec. Doc.  82-13 (emphasis added); Rec. Doc. 82-8, Bilbe Depo., 124:8-126:12.) These admissions by Defendants demonstrate that no additional discovery is needed to determine that Defendants did not pay a salary.

     **B.**     **The "Needs Of The Case" Do Not Justify Discovery On Liability.**

Given Defendants' testimony and admissions, the Court has overwhelming evidence to determine whether Defendants' compensation practices constitute a salary or not. Defendants struggled to articulate a reason why they needed more discovery on the salary basis issue in *Altier*.  Eighteen months later, nothing has changed.  During the *Altier* summary judgment proceedings, Defendants' **only** argument for a Rule 56(d) continuance was that they had not determined "whether the [Plaintiff's] minimum **salary** was subject to deduction based on the quantity or quality of work." (*Altier* Rec. Doc. 263-1, p. 2.)  They continue to bang the same drum in *Akins*.  Plaintiffs contend that such an

inquiry would be futile, because Defendants did not pay a salary to Plaintiffs at all.  Only if this Court determines that payment of a day rate somehow constitutes a salary will it be necessary for the parties to delve into how deductions were taken from Plaintiffs' pay.

       **C.**      **The Costs Of Discovery On Liability Far Outweigh The Benefits.**

Defendants had a clear day rate formula for paying the Plaintiffs, as their Officers have admitted.   There is no benefit to asking each Plaintiff their understanding of Defendants' compensation policies when the testimony of Defendants' Officers is available and they have stated their own understanding of Defendants' pay scheme without contradiction.

       **D.**      **Defendants Have All The Sources To Prove Their Own Comp Practices.**

Finally, if there was any contradiction in how Defendants compensated Plaintiffs, **Defendants have every single witness, policy statement, pay document, and e-mail at their disposal to create issues of material fact**.  This is the ultimate case of discovery that "can be obtained from some other source" more conveniently, with less burden and expense to Plaintiffs.  FED. R. CIV. P. 26(b)(2)(C)(1).  Defendants simply have no need for written discovery from the Plaintiffs to prove how their <u>own</u> policies worked.

       **E.**      **Plain Day Rate Payments Require Overtime.**

Defendants paid Plaintiffs a flat day rate without any additional overtime compensation.   The FLSA requires overtime to be paid on a day rate.   29 C.F.R. § 778.112.  Defendants' confidence in the legality of its compensation system is belied by the fact that they changed their compensation system only eight months after the sister *Altier* litigation was filed, and then failed to disclose this fact to the *Altier* Plaintiffs

during the pendency of their MPSJ.  Defendants' plain day rate compensation system

violates the FLSA because (1) Plaintiffs were not **guaranteed** a salary and the

expectation of an amount of pay does not constitute a guarantee; (2) none of the Plaintiffs

were guaranteed a predetermined amount;[8] (3) assuming *arguendo* the Plaintiffs were

paid a predetermined amount, the payment of a day rate is not payment on a "weekly or

**less** frequent basis" as the Regulations command;[9] and (4) assuming *arguendo* a

guarantee existed, the amounts were not roughly equivalent[10] to the amount Plaintiffs

would earn in a given workweek.

## IV.  NO FURTHER DISCOVERY ON DAMAGES IS NEEDED.

If liability is determined in Plaintiffs' favor, Defendants' timesheets can be used

to calculate damages.  The timesheets are reliable because in almost all cases, they

---

[8] In both *Altier* and *Akins*, Defendants have never identified a predetermined (i.e., guaranteed) amount any Plaintiff was paid on a weekly basis.

[9] A "guarantee" that a person will be paid for a day or hour of work does not comply with the salary basis requirements because the hallmark of a salary is that it is computed on a weekly or less frequent basis and is not based on the number of days or hours worked.  29 C.F.R. § 541.602; *Dole v. Petroleum Treaters, Inc.*, 876 F.2d 518, 519 n.1 (5th Cir. 1989); *Cunningham, v. Faerber's Bee Window, Inc.*, 2005 WL 1123534, at *3 (S.D. Ind. Apr. 19, 2005) ("Maskell was paid per day of work . . . . Hence, Maskell's request for summary judgment on the issue that he was not a salaried employee is GRANTED.").

[10] 29 C.F.R. § 541.604 ("An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned.  The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek") (emphasis added) (the "Minimum Guarantee Regulation"); *Brock v. Claridge Hotel & Casino*, 846 F.2d 180 (3rd Cir.), *cert. denied*, 488 U.S. 925 (1988); App. B, 69 Fed. Reg. at 22183 (Apr. 23, 2004) (Department of Labor's notes related to the 2004 enactment of the Minimum Guarantee Regulation explaining that the "reasonable relationship" test comes from a "long-standing interpretation" of the salary basis requirement contained in its own Field Operations Handbook, "which has been a Wage and Hour Division policy for at least 30 years" and is necessary to "ensure[] that the salary guarantee for such employees is a meaningful guarantee rather than a mere illusion").

include an employee signature, an approval signature, and the initials of one other representative of Defendants.  (Rec. Doc. 82-9.)  Defendants also paid wages to the Plaintiffs solely based on the days they recorded on their timesheets.  (*Id.*)  Finally, Worley is estopped from disputing the timesheets because they were used to invoice its clients for each hour worked by the Plaintiffs.[11]

Defendants have verified the contents of the timesheets through the signatures of Worley representatives, by paying Plaintiffs their wages, and by seeking payment from their clients based on the contents of those timesheets.  <u>Plaintiffs are not asking for additional overtime damages above what the timesheets state</u>.  With Plaintiffs and Defendants agreed on the time spent working for damages purposes, there simply is not any need for damages-based discovery. The costs of such discovery to obtain unauthenticated timesheet documents when the timesheets have already been produced by Defendants far outweigh any "likely benefit."

## V.   ANY DISCOVERY SHOULD BE LIMITED TO REPRESENTATIVE SAMPLES.

### A.   <u>Defendants' Written Discovery Is Unduly Burdensome And Against The Remedial Purposes Of The FLSA.</u>

When this suit was filed on September 30, 2012, there were 180 Plaintiffs who resided in seventeen different states.[12]   (Rec. Doc. 1, ¶¶ 8-187.)  By the time the First Amended Complaint was filed on October 11, 2012, thirty additional evaluators had

---

[11] If Worley disputed the timesheets, it would be admitting its own fraud against its clients.
[12] Including:  (1) Alabama, (2) Arkansas, (3) California, (4) Colorado, (5) Florida, (6) Georgia, (7) Idaho, (8) Illinois, (9) Kansas, (10) Louisiana, (11) Mississippi, (12) New York, (13) North Carolina, (14) Oklahoma, (15) Oregon, (16) Tennessee, and (17) Texas.  *See* Rec. Doc. 1, ¶¶ 8-187.

joined this action, adding three more states of residency.  (Rec. Doc. 9, ¶¶ 188-217.)[13]
Since the First Amended Complaint was filed, an additional twenty-seven evaluators
have joined, bringing the total number of Plaintiffs to 239.  (Rec. Doc. 10, 12-13, 15-16,
18-21, 24, 27, 32-37, 39-40, 43, 47, 50, 56-58, 63, 66, 73-74, 89, 91 (most recent filed
April 22, 2013).)  Plaintiffs' Motion for Conditional Certification was granted on April 8,
2013, and on April 30, 2013, Plaintiffs sent notice to another 500+ putative class
members about their opportunity to join this action.  (Rec. Doc. 83.)

To date, Defendants have served **235 sets** of Interrogatories (containing thirteen
Interrogatories per Plaintiff – or a **total of 3,055 Interrogatories to answer**) and
Requests for Production (containing twenty-two Requests per Plaintiff – or a **total of
5,170 Requests to answer**) on 235 of the individual Plaintiffs.  (*See* Ex. 2, Starzyk
Affidavit, ¶ 3; Ex. 1 (Sample Set with Cover Letter and E-mail).)  Without action by this
Court to limit discovery, Defendants will propound thousands more requests on the
Plaintiffs who choose to join after conditional certification if this Court does not act to
limit individualized discovery. Defendants' individualized discovery requests are
duplicative, unduly burdensome, contrary to the remedial purposes of the FLSA, can be
obtained from Defendants' own records, and will not appreciably advance the ball in this
litigation.

### B.    Individualized Discovery Is Rare In FLSA Collective Actions.

Once a class has been conditionally certified, "[t]he action proceeds as a
representative action throughout discovery."  *Mooney v. Aramco Servs., Inc.*, 54 F.3d

---

[13] Including:  (18) Arizona (19) Utah, and (20) Maryland.  *See* Rec. Doc. 9, ¶¶ 189, 205 & 211.

1207, 1214 (5th Cir. 1995). **"Individualized discovery is rarely appropriate in FLSA collective actions."** *Prentice v. Fund for Pub. Interest Research, Inc.*, 2007 WL 2729187, at *5 (N.D. Cal. Sept. 18, 2007) (emphasis added); *McGrath v. City of Phil.*, 1994 WL 45162, at *8 (E.D. Pa. Feb. 10, 1994) (applying principles of discovery developed under Rule 23 to FLSA collective action, and noting that, "It is well established that individualized discovery . . . is inappropriate in a class action lawsuit."); *Adkins v. Mid-America Growers*, 141 F.R.D. 466, 468 (N.D. Ill. 1992) ("Whether prior to class certification or after, discovery, except in the rarest of cases, should be conducted on a class wide level.") (citing Herbert B. Newberg, *Newberg on Class Actions*, § 16.05 (Supp. 1989)).

C.     **Many Courts Have Favored Representative Discovery.**

In line with many cases in this area, and especially given the particular circumstances of this action (discussed further above), discovery should be restricted to a representative sampling of the class. *See, e.g., Barrus v. Dick's Sporting Goods, Inc.*, 465 F. Supp. 2d 224, 231-32 (W.D.N.Y. 2006) (limiting discovery to representative sample); *Smith v. Lowes Home Ctrs.*, 236 F.R.D. 354, 356 (S.D. Ohio 2006) (same); *Bradford v. Bed Bath & Beyond*, 184 F. Supp. 2d 1342, 1344 (N.D. Ga. 2002) (allowing discovery from 25 of more than 300 plaintiffs); *Belcher v. Shoney's Inc.*, 30 F. Supp. 2d 1010, 1024-25 (M.D. Tenn. 1998) (limiting discovery to representative sample); *Adkins*, 141 F.R.D. at 467-69 (individualized discovery of all plaintiffs is inappropriate in a FLSA collective action, but representative testimony is permissible); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 354 (D.N.J. 1987) (allowing discovery from 64 of more than

1,300 plaintiffs); *Fast v. Applebee's Internat'l, Inc.*, 2008 WL 5432288, *1-2 (W.D. Mo. Dec. 31, 2008) (discovery to FLSA plaintiffs must satisfy several requirements, including that it must be "simple enough that it does not require the assistance of counsel to answer," must otherwise meet the standards of Rule 26; and must not otherwise be available to the defendant); *Cranney v. Carriage Servs., Inc.*, 2008 WL 2457912, at *3-5 (D. Nev. June 16, 2008) (limiting discovery to 10% of a combination of workers and work sites); *Geer v. Challenge Fin. Investors Corp.*, 2007 WL 1341774, * 2-5 (D. Kan. May 4, 2007) (refusing to allow defendant to take depositions from all 272 plaintiffs); *Casas v. Conseco Fin. Corp.*, 2002 WL 246753, * 2-3 (D. Minn. Feb. 15, 2002) (affirming Magistrate Judge's Order denying defendant's motion to send questionnaire to all plaintiffs); *McGrath*, 1994 WL 45162, at *2-3 (holding discovery directed to all FLSA plaintiffs unduly burdensome:  "To allow such discovery would only serve to obfuscate the issues and drastically enhance the costs of litigation.  Such a result cannot be countenanced.").

In limiting discovery to a representative sample, some courts have looked to Rule 26 of the Federal Rules of Civil Procedure and voiced concerns about the burden of extensive discovery of individual class members, the remedial purposes of the FLSA,[14] and/or have relied on Rule 23 principles to support their view that discovery in a collective action should be by representative sampling or by seeking class-wide information in an aggregate form.  *See, e.g., Cranney*, 2008 WL 2458912, at * 3.

---

[14] *Reich v. Circle C. Inv., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) (recognizing the FLSA's "remedial intent"); *Falcon*, 580 F. Supp. 2d at 541 ("[T]he FLSA is a remedial statute.").

      **D.**    <u>**The Parties Should Confer Concerning Representative Discovery.**</u>

In limiting discovery to a representative sample, some courts have directed the parties to meet and confer over the appropriate sample size rather than set it themselves. *Geer*, 2007 WL 1341774, at \*5; *Smith*, 236 F.R.D. at 358; *see also Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528 (S.D. Tex. 2008) (parties agreed to conduct sample discovery of 18 plaintiffs). And some courts will leave the door open to the possibility of additional discovery if the defendant can make a later showing that it is necessary. *Smith*, 236 F.R.D. at 357-58; *Cranney*, 2008 WL 2457912, at \*3; *Geer*, 2007 WL 341774, at \*2; *Adkins*, 143 F.R.D. at 171; *Falcon*, 580 F. Supp. 2d at 529-30 (parties agreed to depose 18 of 355 plaintiffs, with Defendants choosing 10 of the 18).

**VI.**    **REPRESENTATIVE DISCOVERY IS PROPER ON WILFULNESS.**

If liability is decided, the only remaining issues to be decided are Defendants' good faith and willfulness. To the extent any further discovery is needed from Plaintiffs on these issues, discovery can be completed on a representative basis.

      **A.**    <u>**Good Faith Is A Class Wide Issue Meriting Representative Discovery.**</u>

Under the FLSA an employer can show good faith and avoid liquidated damages at the discretion of the Court only:

> "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended."

29 U.S.C. § 260; *Singer*, 324 F.3d at 822-23. Here, using a day rate compensation system is "the act or omission" giving rise to this action which affected all class members. Good faith is simply a question of whether Defendants objectively and

subjectively attempted to comply with the FLSA that is unlikely to merit any discovery from Plaintiffs.  Evidence of <u>Defendants'</u> state of mind is discovered <u>from Defendants</u>, not Plaintiffs.  Plaintiffs have not identified any pending requests that will result in discovery <u>from Plaintiffs</u> regarding Defendants' objective or subjective beliefs.   If Defendants contend that discovery <u>from Plaintiffs</u> on the issue of Defendants' good faith is not complete at this time, then it is Plaintiffs' position that any discovery on the issue should be done on a representative basis.

**B.**      **Willfulness Is A Class Wide Issue Meriting Representative Discovery.**

Under the FLSA, the statute of limitations should be extended from 2 years to 3 years, if an employer's conduct is determined to be willful.  29 U.S.C. § 255.  Like good faith, willfulness is a question of the <u>employer's</u> state of mind.  *Singer*, 324 F.3d at 821-22.  An FLSA violation is willful if the employer either "knew or showed reckless disregard for… whether its conduct was prohibited by the statute."  *Id.* at 821.

**C.**      **Courts Have Routinely Decided These Issues On A Class-Wide Basis.**

Good faith and willfulness are issues of a defendant's state of mind that courts have regularly decided on a class-wide basis.  *Mumby*, 636 F.3d at 1268-72(holding defendant willfully violated the FLSA by maintaining a day rate compensation system for field employees who worked 12 hours a day, 7 days a week and awarding liquidated damages); *Singer*, 324 F.3d at 821-23 (holding defendant willfully violated the FLSA with respect to its compensation practices for firefighters and awarding liquidated damages).

## VII.   DEFENDANTS' IRRELEVANT REQUESTS.

Some of Defendants' requests are completely irrelevant under Rule 26 to the claims and defenses in this case.  As this Court has recognized, Rule 26(b) "provides that parties may obtain discovery regarding any matter, not privileged, that is relevant to *the claim or defense of any party*."  *Thibault*, 2008 WL 4808893 at *1 (emphasis in original); FED. R. CIV. P. 26(b)(1).  Defendants have requested of 235 Plaintiffs that they provide their employment history for the last 15 years, their lifetime litigation history, lifetime criminal records, state whether anyone informed them of the settlement in the *Altier* case, state what they were told about the settlement in the *Altier* case, and to produce any settlement agreement they received from the *Altier* case.  (Ex. 1, RFP Nos. 19-20; ROG Nos. 9-11.)   None of these matters involve a claim or defense that is the subject of this case.

At best, these are matters related to the subject matter of the suit.  As such the Court may order discovery on these matters only if the party seeking such discovery makes a showing of good cause.  *Thibault*, 2008 WL 4808893 at *1; *Amir Athletic, LLC v. State Farm Fire & Cas. Comp.*, 2012 WL 520658 (E.D. La. Feb. 16, 2012) (Wilkinson, Mag. J.); *Guidry v. United States*, 2004 WL 2984808 at * 1 (E.D. La. Dec. 22, 2004) (Wilkinson, Mag J.); FED. R. CIV. P. 26(b).  This Court reasoned in *Thibault* that plaintiff's request about the relationship between defendants and other plaintiffs regarded the subject matter of the case and determined plaintiff did not have "good cause" for that request.   Likewise, Defendants do not have "good cause" to request 15 years of

information regarding each Plaintiff's relationships with other employers. Defendants also cannot show "good cause" to support their requests for the Plaintiffs' knowledge of the *Altier* settlement, lifetime litigation histories, and lifetime criminal histories.

## VIII. CONCLUSION.

For the foregoing reasons, Defendants' discovery regarding the merits and damages, and their irrelevant discovery requests, should be quashed. All remaining discovery the Court deems appropriate should be conducted on a representative basis.

RESPECTFULLY SUBMITTED,

___/J.P. Hughes, Jr./_____
**J.P. Hughes, Jr.**
LA Bar # 21302
**Nicholas S. Brown**
MS Bar # 102124*
**HUGHES BROWN, PLLC**
1300 Access Road, Suite 100
Oxford, Mississippi 38655
T: [662] 234-6080
F: [800] 515-5446

**Michael A. Starzyk**
TX Bar # 00788461*
**April L. Walter**
TX Bar # 24052793*
**Hessam Parzivand**
Texas Bar # 24071157*
**STARZYK & ASSOCIATES, P.C.**
10200 Grogan's Mill Road, Suite 300
The Woodlands, Texas 77380
T: [281] 364-7261
F: [281] 364-7533

**Joseph E. Fieschko Jr.**
PA Bar # 28797*
**FIESCHKO AND ASSOCIATES, NC.**
2230 Koppers Building

Pittsburgh, Pennsylvania 15219
T: [412] 281-2204
F: [412] 338-9169

**John R. Linkosky**
PA Bar # 66011*
**JOHN LINKOSKY & ASSOCIATES**
715 Washington Avenue
Carnegie, Pennsylvania 15106
T: [412] 278-1280
F: [412] 278-1282

*Admitted Pro Hac Vice*

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

I certify that counsel for Plaintiffs repeatedly conferred with counsel for Defendants and made reasonable efforts to reach an agreement about Plaintiffs' Motion without the necessity of court intervention.  Defendants oppose this motion.

   /J.P. Hughes, Jr./ _____
                    J.P. Hughes, Jr.

*18*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of May, 2013, I served the foregoing on the

following in accordance with the Federal Rules of Civil Procedure:

**Jennifer L. Anderson**
Jones, Walker, Waechter, Poitevent,
  Carrere & Denegre, LLP
Four United Plaza
8555 United Plaza Boulevard
Baton Rouge, Louisiana 70809-7000
E-mail: janderson@joneswalker.com
[**Via E-file**]

**Mary Margaret Spell**
Jones, Walker, Waechter, Poitevent,
  Carrere & Denegre, LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
E-mail:  mspell@joneswalker.com
[**Via E-file**]

**James R. Lewis**
Crawford Lewis
450 Laurel Street, Suite 1600
Baton Rouge, Louisiana 70801
E-mail:  jlewis@crawford-lewis.com
 [**Via E-file**]

**COUNSEL FOR DEFENDANTS**

    /J.P. Hughes, Jr./
                  J.P. Hughes, Jr.