UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN AKINS ET AL. | CIVIL ACTION |
| VERSUS | NO. 12-2401 |
| WORLEY CATASTROPHE RESPONSE, LLC ET AL. | MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

## ORDER AND REASONS ON MOTION

All of the parties in this matter, except Ronald Sorenson, Jr., who is currently proceeding pro se, have filed a Joint Motion to Approve Settlement and for Conditional Dismissal. Record Doc. No. 328. They also submitted for my in camera review their confidential settlement agreement and attached exhibits, including a detailed breakdown of the amounts that will be paid to each participating plaintiff and the voluminous time and task description records of plaintiffs' counsel in support of the attorney's fees provision in the proposed settlement agreement.

This matter was previously referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties. Record Doc. No. 26. Having considered the motion and its attachments and for the following reasons, the court grants the motion and approves the proposed settlement, but only subject to the modifications set out in this order.

As an initial matter, because plaintiff Sorenson is no longer represented by plaintiffs' counsel, Record Doc. Nos. 323 and 324, has not participated in the settlement discussions and will not participate in the settlement, the parties have requested that his individual

claims be preserved by severing them from this collective action, so that Sorenson's claims may proceed separately. The court approves this request. Accordingly,

IT IS ORDERED that the claims of plaintiff Ronald Sorenson, Jr., are specifically preserved and are hereby SEVERED from the above-captioned case, so that they may be prosecuted and resolved as an independent and individual action, to be assigned a new pre-trial schedule and trial date in accordance with additional orders of the court that will be separately entered.

"Because this case arises under the Fair Labor Standards Act, the Court must scrutinize the settlement for fairness before issuing its approval." Domingue v. Sun Elec. & Instrumentation, Inc., No. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010) (Vance, J.) (citing 29 U.S.C. § 201 et seq.; Schulte v. Gangi, 328 U.S. 108, 113 n.8 (1946); Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-55 (11th Cir. 1982)). Before approving a settlement in an FLSA collective action, the court must determine whether (1) the settlement involves the resolution of a bona fide dispute over an FLSA provision and (2) the settlement is fair and reasonable. Lynn's Food Stores, 679 F.2d at 1352-55; Jarrad v. S. Shipbldg. Corp., 163 F.2d 960, 960 (5th Cir. 1947); Domingue, 2010 WL 1688793, at *1 (citing Lynn's Food Stores, 679 F.2d at 1355); Liger v. New Orleans Hornets NBA Ltd. P'ship, No. 05-1969, 2009 WL 2856246, at *1 (E.D. La. Aug. 28, 2009) (Berrigan, J.) (citing Lynn's Food Stores, 679 F.2d at 1355; Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714, 717 (E.D. La. 2008) (Berrigan, J.); Camp v. Progressive Corp., No. 01-2680, 2004 WL 2149079, at *4 (E.D. La. Sept. 23, 2004) (Wilkinson, M.J.)).

Although the provisions of Fed. R. Civ. P. 23, which governs class actions, do not apply to collective actions under the FLSA, cases interpreting Rule 23(e) are analogous and applicable to the instant FLSA action. Id. at *2 (citing Hitchcock v. Orange County, No. 604CV1722ORL28JGG, 2006 WL 3614925 (M.D. Fla. Dec. 11, 2006); Brask v. Heartland Auto. Servs., Inc., No. 06-CV-00011, 2006 WL 2524212 (D. Minn. Aug. 15, 2006); Camp, 2004 WL 2149079, at *5). In determining whether a settlement is fair, adequate and reasonable, the court should consider the following six factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

Reed v. Gen. Motors Corp., 703 F.2d 170, 172 (5th Cir. 1983) (citing Parker v. Anderson, 667 F.2d 1204, 1209 (5th Cir. 1982)); accord Liger, 2009 WL 2856246, at *2; Collins, 568 F. Supp. 2d at 722.

Having reviewed the record as a whole, I find that the instant action presents bona fide disputes over several FLSA provisions. On their face, "disagreements over 'hours worked or compensation due' clearly establishes (sic) a bona fide dispute. The institution of a federal court litigation followed [by] aggressive prosecution and strenuous defense demonstrates the palpable bona fides of this dispute." Bredbenner v. Liberty Travel, Inc., No. 09-905, 2011 WL 1344745, at *18 (D.N.J. Apr. 8, 2011) (quoting Hohnke v. United States, 69 Fed. Cl. 170, 175 (Fed. Cl. 2005)) (citing D.A. Schulte, Inc. v. Gangi, 328 U.S.

108, 113 n.8 (1946); Lynn's Food Stores, 679 F.2d at 1354); accord Liger, 2009 WL 2856246, at *3 (citing Hohnke, 69 Fed. Cl. at 175). This court has observed both aggressive prosecution and strenuous defense in this case. Thus, the first prong of the settlement approval process is satisfied.

In addition, considering all of the Reed factors, 703 F.2d at 172, I find that the proposed settlement is fair, reasonable and adequate to the collective action members. The court may presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. 4 Newberg on Class Actions § 11.41 (4th ed.) (avail. on Westlaw without pagination; database updated Dec. 2013); accord Liger, 2009 WL 2856246, at *3; Collins, 568 F. Supp. 2d at 725. While approval of a proposed settlement is discretionary, "it is clear that the court should not give rubber-stamp approval." Newberg on Class Actions § 11.41. There is also a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary. Id. § 11.51; accord Liger, 2009 WL 2856246 at *3; Collins, 568 F. Supp. 2d at 725.

In the instant case, no evidence refutes these presumptions. On the contrary, the evidence and the court's record and observations establish that the parties conducted extensive settlement discussions, including several additional settlement conferences conducted by me, that led to finalization of the settlement agreement, following substantial discovery. The settlement agreement treats all collective action members uniformly. Benefits will be distributed based on objective criteria of employment status, wages and the amount of time worked.

Reasonable additional amounts are awarded to collective action representative Akins and other plaintiffs who participated directly in depositions and discovery. Such incentive awards

> are not uncommon in class action litigation and particularly where . . . a common fund has been created for the benefit of the entire class. The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws.

Sullivan v. DB Invs., Inc., 667 F.3d 273, 333 n.65 (3d Cir. 2011) (quotations and citations omitted); accord Henderson v. Eaton, No. 01-0138, 2002 WL 31415728, at *6 (E.D. La. Oct 25, 2002) (Vance, J.) (citing In re S. Ohio Corr. Facility, 175 F.R.D. 270, 272-73 (S.D. Ohio 1997)).

Moreover, the complexity, expense and duration of the litigation, the late stage of the proceedings and the amount of discovery in advance of a looming discovery deadline and in preparation for a firm trial date less than two months away are all factors that weigh heavily in favor of finding that the settlement is fair and reasonable. This lawsuit was filed more than 18 months ago. A collective action was conditionally certified, and the court ordered that notice be given to potential collective action members that they must opt in to the case in writing. The discovery process has been lengthy and involved.

A jury trial estimated to last two weeks is scheduled for June 2, 2014, with a final pretrial conference set for May 15, 2014. Extensive motion practice was anticipated before the final pretrial conference. Trial in this matter would be not only lengthy, but also

complicated and expensive. "Issues of decertification and dispositive motions were avoided because of the progress of settlement negotiations." Collins, 568 F. Supp. 2d at 726. These factors weigh in favor of approving the settlement.

The probability of plaintiffs' success on the merits, including much uncertainty about the outcome, weighs heavily in favor of approving the settlement agreement. The settlement amounts to be paid to each participating plaintiff, which have been set out in particularized detail to the court in Exhibit A to the Confidential Settlement Agreement, are within the range of possible recovery and reflective of both the similarities and differences between the positions of the plaintiffs in this case and the similar, previous case of Altier v. Worley Catastrophe Response, LLC, C.A. No. 11-241 c/w 11-242, over which I presided and the settlement of which I approved.

The parties join in requesting approval of the settlement, which was arrived at after extensive negotiation. "The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." Liger, 2009 WL 2856246, at *4 (citing Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977)). Although a potential conflict of interest always exists between an attorney and members of a collective action, id. (citing City of Detroit v. Grinnell Corp., 495 F.2d 448, 462 (2d Cir. 1974); In re Employee Benefit Plans Sec. Litig., No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. 1993)), I find that plaintiffs' counsel have worked diligently and in good faith to secure a reasonable compromise.

The proposed settlement agreement includes a provision for plaintiffs' counsel to receive 25 percent of the total settlement amount as attorney's fees, plus a specified amount for costs. Record Doc. No. 328-1 at p. 1. Exhibit A to the motion asserts that "[b]ecause the time expended by Class Counsel during the prosecution of this case exceeds the 25% of common fund amount, Class Counsel will not be requesting an upward departure." Record Doc. No. 328-1. Although Worley does not object to the requested fees or costs, I conclude after my review of the extensive evidentiary submissions concerning attorney's fees that the above-quoted statement in Exhibit A is inaccurate in that the time documented in the evidence multiplied by the hourly rates requested does not exceed 25 percent. Thus, an attorney's fees amount less than 25 percent will be approved as follows.

The methods used by various federal courts to assess reasonable attorney's fees in a class or collective action involving a common settlement fund

> include the 'lodestar' method, which entails multiplying the reasonable hours expended on the litigation by an adjusted reasonable hourly rate; the percentage method, in which the Court compensates attorneys who recovered some identifiable sum by awarding them a fraction of that sum; or, more recently, a combination of both methods in which a percentage is awarded and checked for reasonableness by use of the lodestar method.

In re Vioxx Prods. Liab. Litig., 760 F. Supp. 2d 640, 651 (E.D. La. 2010) (Fallon, J.) (citation omitted). Under any of these methods, "the ultimate goal is reasonableness." Id. at 650-51.

The Manual on Complex Litigation states that a fee of 25 percent of a common fund "'represents a typical benchmark'" in common fund cases, while the "Ninth Circuit has

adopted a benchmark of 25% in common fund cases" and common fee awards in securities suits "generally fall within the 20 to 33 per cent range." In re OCA, Inc. Sec. & Derivative Litig., No. 05-2165, 2009 WL 512081, at *19 (E.D. La. Mar. 2, 2009) (Vance, J.) (quoting Manual on Complex Litigation (4th) § 14.121)) (citing Staton v. Boeing Co., 327 F.3d 938, 968 (9th Cir. 2003); Newberg on Class Actions § 14.6 (4th ed.)). However, the Fifth Circuit has traditionally used the lodestar method to calculate reasonable attorney's fees in all types of cases.

> While the United States Supreme Court has approved the percentage method in common fund cases, it has never formally adopted the lodestar method in common fund cases. Conversely, the Fifth Circuit appears to be the only Court of Appeals that has not explicitly endorsed the percentage method. However, neither has the Fifth Circuit "explicitly disapproved of the percentage method of calculating fees in common fund cases." Therefore, the Fifth Circuit appears to tolerate the percentage method, so long as the Johnson framework is utilized to ensure that the fee awarded is reasonable.

In re Vioxx, 760 F. Supp. 2d at 651 (quoting In re OCA, Inc. Sec. & Derivative Litig., 2009 WL 512081, at *18) (citing Blum v. Stenson, 465 U.S. 886, 900 n.16 (1984); Strong v. BellSouth Telecomms., Inc., 137 F.3d 844, 851-52 & n.5 (5th Cir. 1998); Forbush v. J.C. Penney Co., 98 F.3d 817, 823-25 (5th Cir. 1996); Camden I Condo. Ass'n v. Dunkle, 946 F.2d 768, 773-74 (11th Cir. 1991); In re Prudential-Bache Energy Income P'ships Sec. Litig., MDL No. 888, 1994 WL 150742 (E.D. La. Apr. 13, 1994) (Livaudais, J.); Manual for Complex Litigation (Fourth) § 14.121 (2004)). The Fifth Circuit has stated that "[t]his circuit requires district courts to use the 'lodestar method' to assess attorneys' fees in class action suits." In re High Sulfur Content Gasoline Prods. Liab. Litig., 517 F.3d 220, 228

(5th Cir. 2008) (emphasis added). The lodestar amount "is presumptively reasonable and should be modified only in exceptional cases." Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993) (citing City of Burlington v. Dague, 505 U.S. 557, 562 (1992)); accord Perdue v. Kenny A., 130 S. Ct. 1662, 1669, 1673 (2010); Smith & Fuller, P.A. v. Cooper Tire & Rubber Co., 685 F.3d 486, 490 (5th Cir. 2012); Jimenez v. Wood Cnty., 621 F.3d 372, 379-80 (5th Cir. 2010).

The lodestar amount is calculated by multiplying the reasonable number of hours expended by counsel by their reasonable hourly rates. In this case, plaintiffs' counsel have submitted voluminous verified time and task description materials establishing that they expended a total of 5,283.80 hours of time in the prosecution of this case. This total of hours is somewhat less than but comparable to the number of hours expended and approved in the similar and somewhat related Altier case, C.A. No. 11-241 c/w 11-242, referenced by counsel in their Exhibit A to the joint motion. Record Doc. No. 312 at p. 51 in C.A. No. 11-241. Considering the wide variety and scope of the tasks reported in these materials, including extensive discovery and settlement negotiations, the large number of opt-in plaintiffs, the complexity of the case and its duration, I find that this number of hours was reasonably expended in this matter.

As to the hourly rates charged by plaintiffs' attorneys and paralegals, I apply the same range of rates which were applied and approved by me in the similar and somewhat related Altier case, C.A. No. 11-241 c/w 11-242, in which all but one of the attorneys who now seek fees also worked, as referenced by counsel in their Exhibit A to the joint motion

and as set out in my order approving the <u>Altier</u> settlement, Record Doc. No. 312 at p. 48 in C.A. No. 11-241. For the same reasons contained in the <u>Altier</u> order approving that settlement, with the three modifications set out in the following paragraphs, I find that the hourly rates attributed to each lawyer and paralegal who worked on the <u>Akins</u> matter are also reasonable in this case.

The first of these three attorney's fee modifications concerns Paul Rinnan, who was approved more than two years ago to recover fees at the low associate's rate of $150 per hour in <u>Altier</u>. He now seeks fees concerning the vast majority of his time at the rate of $200 per hour. I find that, in light of his increased experience of more than two additional years of law practice since the <u>Altier</u> award, an increased rate of $200 per hour for Rinnan is reasonable.

Similarly, the second modification from the <u>Altier</u> award is for paralegals of the Starzyk law firm, whose hourly rates have moderately increased during the two years since the <u>Altier</u> award to hourly rates ranging in the $115-$120 per hour range, which I also find are reasonable rates for paralegals in the relevant legal market (the New Orleans area) for persons of their levels of experience.

The third modification concerns attorney Megan M. Mitchell, who was Megan McGregor at the time of the <u>Altier</u> award and who now seeks fees at the rates of $175 per hour for 204.5 hours of work and $190 per hour for 74.55 hours of work. For the following reasons, I find those hourly rates excessive. At the time of the <u>Altier</u> award,

Mitchell was a law clerk who was approved by me to receive fees in the amount of $105 per hour. <u>Altier</u>, C.A. No. 11-241 Record Doc. No. 312 at p. 49. According to the website of the State Bar of Texas, she did not become a lawyer licensed to practice law until November 1, 2013, less than six months ago. The evidence submitted to me in connection with the current plaintiffs' fee approval application establishes that 203 of the total 279.05 hours worked by her on this matter occurred <u>before</u> she was licensed to practice law, at a time when she must have continued to work only as a law clerk, not a lawyer. Thus, I will approve her time for payment only at the highest current hourly rate for paralegals and/or law clerks reflected in the billing records of her employer, the Starzyk law firm, which is $120 per hour. The evidence establishes that after Mitchell became licensed to practice law on November 1, 2013, she worked an additional 76.05 hours on this matter as a beginning associate with less than six months of actual law practice experience. For these hours, I will approve only a rate of $160 per hour, representing a small increase in the hourly rate that was awarded for Rinnan in the <u>Altier</u> case two years ago, when he was a junior associate with little more experience than Mitchell.  At these lower rates, the amount I will approve for payment of Mitchell's time is reduced by $13,424.00, from the total of $49,952.00 requested in the submissions of the Starzyk law firm to a total of $36,528.00.

According to the calculations submitted by plaintiffs' counsel in their "Summary of Exhibit D" accompanying their voluminous, detailed evidence supporting their fee

application, the total amount of fees requested when the reasonable number of hours submitted is multiplied by their requested hourly rates is ▮▮▮▮▮▮▮. For the reasons set out in the foregoing paragraph, I must reduce this number by $13,424.00 in connection with Mitchell's work. This lower amount of ▮▮▮▮▮▮ is the lodestar amount, and it is less than the 25 percent fee requested. Nothing has been submitted that would justify any upward modifier increasing this lodestar amount, which is presumptively reasonable. Accordingly, the court approves the payment of attorney's fees to plaintiffs' counsel from the settlement amount in this case up to but not exceeding ▮▮▮▮▮▮▮, which must be distributed among counsel in compliance with their fee-sharing agreement, Exhibit F to the proposed settlement agreement. The amount for attorney's fees requested in the motion papers that exceeds this approved amount must be added back into the common fund for the benefit of and payable to plaintiffs participating in the settlement. Both the settlement agreement and its Exhibit A reflecting the amounts of payments to be made to each individual plaintiff must be adjusted accordingly.

The parties have agreed that a specified amount of the settlement funds shall be allocated as costs, which the agreement specifically defines. The amount available to pay costs is capped at a specific number, which is a reasonably low percentage of the total settlement value. The agreement provides that any amount left in the costs fund after all of the actual costs are paid will revert to the participating plaintiffs, to be allocated among them according to the same percentages by which the main settlement fund will be allocated. I find that the amount allocated for costs is fair and reasonable.

For all of the foregoing reasons, IT IS ORDERED that the joint motion to approve settlement is GRANTED as to all plaintiffs except Ronald Sorenson, Jr. (whose claims have been preserved and severed), but only as modified above concerning the amount of approved attorney's fees and resulting recalculation of the increased amounts to be paid to participating plaintiffs.

IT IS FURTHER ORDERED that this case is hereby dismissed, each party to bear its own fees and costs except as provided in the confidential settlement agreement, without prejudice to the rights of the parties to move for summary judgment seeking to enforce the settlement or to reopen the matter if settlement is not consummated, as provided in Local Rule 41.2. The court also retains jurisdiction over the parties and their confidential settlement agreement, including the fee-sharing agreement among plaintiffs' attorneys, for purposes of enforcing such agreements should any controversy arise about the terms of the agreements or any party's performance of its obligations thereunder for a reasonable time after the final payment to any party is due to be paid under the confidential settlement agreement. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 114 S. Ct. 1673 (1994).

IT IS FURTHER ORDERED that, upon the court's receipt of a joint motion to dismiss to be filed by the parties no later than 60 days after the disbursement of the balance of the payments as specified in the confidential settlement agreement, the court will enter a final order dismissing with prejudice all claims of all plaintiffs in this action, each party to bear its own fees and costs except as provided in the confidential settlement agreement,

except that the claims of any non-participating plaintiffs as defined in the confidential settlement agreement shall be dismissed without prejudice to any rights such non-participating plaintiffs may have to refile such claims in the United States District Court for the Eastern District of Louisiana. The parties shall identify in their joint motion to dismiss the names of any non-participating plaintiffs, or shall indicate that there are no non-participating plaintiffs, as the case may be.

New Orleans, Louisiana, this __11th__ day of April, 2014.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE